GastoN, Judge.
 

 After stating the case as abo\e, proceeded: — Three objections have been urged on the hearing against the plaintiff Goode. In the first place it is objected, tliat the agreement between him ami
 
 Bunt,
 
 whereby they were to be equally interested in the purchase made by the latter, was one in fraud of public ' policy, as calculated to prevent competition at the sale, and to deceive those present at the sale and ignorant of that agreement. Secondly, it is insisted that his oppressive and usuriotts exactions from
 
 Alexander Boijd
 
 for ‘ indulgence on the judgment, for the satisfaction of which the land was sold, deprive him of all claim to the aid of -a court of equity, for making good his purchase at such sale. And thirdly, it is contended that the waiver of ' title under the deed of trust was procured by fraud, and that he who was guilty of that fraud shall not be permitted to take the advantage of such waiver.
 

 Not having been present at the argument of
 
 Hunt’s
 
 %ill, I do not know whether the objections now urged were then made, or if they were then made, what were the reasons which induced the court to overrule them. It is probable, however, from the submissions in Hato-
 
 Mil’s
 
 answer to
 
 Hunt’s
 
 amended bill, that there was no. opposition to this decree. But it Mould seem that the objections, if valid against one of the plaintiffs, M'ere valid against both. Whatever may be the forms of the transaction,
 
 Hunt
 
 and
 
 Goode
 
 purchased jointly by one and the same act, had one and the same title to relief; instead of being arrayed on different sides of the controversy, ought to have been joined as plaintiffs in the same bill, and are liable to have their claim repelled by one and the same defence. If the purchase M’ere designed to stifle, or necessarily tended to stifle fair competition— if one of the parties in the association cannot be admitted to join in insisting on the purchase — if the waiver of the outstanding title to the land Mere procured by the fraud of a partner in the
 
 transaction
 
 — the-purchase could
 
 *397
 
 not stand, and ought not to he aided in a court of equity. No one can there be permitted to set up a benefit derived through the fraud of another, although lie may not have had a personal agency in the imposition.
 
 (Huguenin
 
 v.
 
 Basely
 
 14 Ves. 238.) Still less can one of two joint contractors ask to
 
 sever
 
 the contract, and let him have the benefit of
 
 half
 
 of tiie bargain, in order to escape the pollution with which the fraud of his companion has tainted the entire transaction.
 

 No one can in equity, be permitted to set up a benefit derived through the fraud of another, although he may not have had a personal ager.cy in the imposition.
 

 As it is probable however that the objections now urged were not pressed on the hearing of
 
 Hunt's
 
 case, we have examined, and considered of these objections as wholly unaffected by the adjudication then made.— The first relies on the fact that
 
 Goode
 
 was concerned in the purchase made by
 
 Hunt,
 
 and that this interest was not proclaimed at the the time of the bidding.--— Wc arc unaware of any judicial decision, by which such a connection in a purchase at execution, or other public sale, is denounced as a fraud, nor do we find ourselves warranted by fair inference from any established principles, in pronouncing so sweeping a denunciation. The case of
 
 Smith v. Greenlee
 
 (2
 
 Dev.Rep.
 
 126) referred to in this part of the argument, certainly contains no
 
 adjudication
 
 to that extent. So far from it, this court reversed the judgment below.and ordered a new trial from an apprehension that the
 
 language
 
 of the judge’s instruction might have induced the jury to think that all agreements to buy on joint concern at execution sales, were unfair. Whether any question might be entertained of the correctness of the doctrine asserted in that case as applied to the trial of an
 
 ejectment
 
 in a court of law, we have none of its soundness as applicable to the controversy here, and for that purpose adopt altogether the principles which it sanctions. If an agreement for one to bid on behalf of himself and others, be made to stifle, paralyze or discourage competition, those concerned in such an association shall not be permitted to derive benefit from a sale, the fairness of which has been thus violated. But persons may legitimately unite in an association, by which one shall bid for the
 
 *398
 
 benefit of all concerned, when the motive for such association is not dishonest, nor tlse object, nor the effect of it to produce an improper result. The act does not necessarily imply a dishonest motive, an improper end, or an injurious consequence. If by reason of these, the act should be repugnant to fair dealing, then he who objects to it because of such repugnancy, must
 
 alledge
 
 and
 
 prove
 
 the matters which render it liable to be thus impeached. It appears to us that this has not been done on the part of the defendants in the present case.
 

 We deem it unnecessary to enquire whether the second objection lias or has not been sustained by proof. If clearly established, we do not perceive how a wrong done-by the plaintiff to
 
 Alexander Boyd,
 
 can furnish a justification to the defendants in now setting up against the plaintiff a title to the land which at the time of the purchase, they explicitly waived.
 
 Goode
 
 is asserting no equity, and asks no relief against
 
 Alexander Boyd.
 
 The latter is no party to the present proceedings. What is the true state of the monied transactions between
 
 Goode
 
 and
 
 Alexander Boyd,
 
 or between the former and the sureties of the latter, us such, is not here in contestation, cannot here be settled, and is in no way material to the decision of the equity which
 
 Goode
 
 sets up, to have a legal title removed out of the way of his purchase at the execution sale. He claims relief against those who set lip this legal title, and upon the ground of their agreement. They may rightfully insist pn any opposing equity which they have against him, but they cannot insist that be shall redress the wrongs of
 
 Alexander Boyd,
 
 before be shall be heard to complain of the wrongs which they have inflicted, or threaten to inflict on him.
 

 The principal objection in the case, remains to be considered. As far as we can ascertain the facts upon, which this objection rests, they appear to be these: At the May term, 1822, of Granville County Court, the judgment of the executors of
 
 William Smith
 
 to the use of
 
 Goode,
 
 was rendered against
 
 Alexander Boyd
 
 arid
 
 Spotswood Burrell, for
 
 about the sum of 89000 on a bond In which the said
 
 Alexander
 
 was principal, and
 
 Burrell,
 
 
 *399
 
 the defendant
 
 Richard Boyd,
 
 and others, were sureties. The first execution on this judgment was a
 
 fi. fa.
 
 directed to the Sheriff of Granville, tested of the first Monday o-f November, 1822. On this, g'185'1 was paid by the defendants, and the execution stayed for the balance.— ■Writs off. fa. directed to the sheriff of the same county were regularly made out, issued and delivered to the said sheriff, and by
 
 him returned
 
 “indulged,” which were tested the first Mondays of February, August and November, 1823, and of February, 1824. There was also a writ of the intermediate term, May 1833, and tested of the first Monday of May, made out but not delivered to the said sheriff. An execution tested the first Monday of May, 1824, was then directed to the sheriff of Warren,and by him levied on certain slaves, and this tract of land, After the rendition of this judgment,and after the teste of the second execution, viz: on the 18th February, 1823,the deed of trust to
 
 Fitts
 
 for the security of
 
 Richard Boyd
 
 and
 
 Thornton
 
 was made. This deed was proved in April, 1823, and was afterwards registered, but the time of such registration does not appear. I presume, however, that it was registered shortly after its probate. A legal question arose, whether the land conveyed by this deed of trust was subject to be sold under the cxecution-^-and at the Warren County Court in May, 1824,
 
 Goode, Alexander Boyd, Richard Boyd, Thornton,
 
 the sheriff of Warren and many others being present, the opinion of
 
 Robert H. Jones,
 
 Esq. a respectable lawyer of that
 
 county,
 
 was asked.
 
 Goode stated
 
 that his judgment was prior to the deed of trust — that his first execution was prior to it, and that this had been kept alive by executions regularly issued every term thereafter. This statement was not contradicted by any person, and was expressly confirmed by
 
 Alexander
 
 and
 
 Richard Boyd.
 
 Mr.
 
 Jones,
 
 thereupon, without any further inquiry, decided that the execution then in the sheriff’s hands bound the land notwithstanding the deed.—
 
 Goode,Richard Boyd
 
 and
 
 Thornton
 
 then agreed, to which agreement
 
 Fitts
 
 assented, that all claim to the land under the deed would be waived as against the execution,
 
 *400
 
 upon
 
 Goode's
 
 consenting that the sale should be made for Virginia notes at par, and North Carolina notes at& per cent, discount. Upon this agreement the sales were made.
 

 These facts do not, in the opinion of the court, establish the allegation of fraud and misrepresentation against the plaintiff, nor justify the defendants in now setting up title under the deed of trust,to defeat his purchase at those sales. The charge of fraud rests on the falsehood of
 
 Goode’s
 
 assertion, that the lien of his first execution had been
 
 didy
 
 and
 
 regularly
 
 continued by those subsequently issued. This assertion, say the defendants,was1 false, for all the executions prior to the last having been directed to-the sheriff of Granville, the execution directed' to the sheriff of Warren did not relate to any of the-former, so as to bind the property of
 
 Boyd
 
 in Warren county — and it was also false in this, that one of thé Granville executions, that of May 1823, was never delivered to the Sheriff, but remained cither in the clerk’s office,or in the hands of
 
 Goode. It
 
 is not pretended that the plaintiff’s
 
 opinion
 
 upon any
 
 legal
 
 question was either desired, or required, or relied upon by the-parties. For the determination of questions of
 
 that
 
 character, Mr..
 
 Jones
 
 was appealed to. If there was any error in liis decision, this error is attributable to the plaintiff so far only as ho may have occasioned it by a misrepresentation or suppression of material' facts. Mr.
 
 Jones
 
 did not require to be informed whether the executions preceding that then in the hands of the sheriff had been directed to the sheriff of Warren,or to the sheriff of Granville, nor whether these preceding executions had been actually placed in the hands of the sheriff to whom they were directed. It is no imputation on Mr.
 
 Jones’
 
 professional reputation that he did not make these enqui-ries, for unquestionably until long afterwards, till the' decision of the case of
 
 Den ex dem. Hardy
 
 v.
 
 Jasper (3 Dev. Rep.
 
 158,) many of the first men of the profession held that an
 
 alias fi.fa.
 
 to whatever sheriff directed, bound all the property of the debtor against Ais alienations,from the test of the first
 
 Ji.fa.
 
 and it is not yet settled, nor
 
 *401
 
 are we prepared now to decide that, as against the defendant in the execution and his
 
 alienees,
 
 the lien of the original
 
 fi.fa.
 
 is lost, because an
 
 alias
 
 properly directed,was not put into the sheriff’s hands. The case
 
 of Palmer
 
 v.
 
 Clark (2 Dev. Rep. 354)
 
 expressly confines the adjudication to disputes for priority between conflicting execution creditors. Had Mr.
 
 Jones
 
 deemed these enquiries material, he would have made them. Neither he, nor any other witness testifies that the plaintiff stated any
 
 specific fact
 
 untruly. The defendants in their answers,charging the plaintiff with fraud and misrepresentation in the strongest terms specify
 
 no fact
 
 which was falsely alleged by him.
 
 Richard Boyd
 
 avers that the plaintiff exhibited a statement from the clerk of Granville County Court, shewing what executions had been sued out, and there is no evidence to prove that such statement varied in effect from the transcript which has been exhibited to us.
 
 Alexander Boyd
 
 and
 
 Richard Boyd,
 
 says Mr.
 
 Jones,
 
 confirmed
 
 Goode’s
 
 statement. Can there be a question that both these, and especially the former, who had repeatedly obtained indulgence from the sheriff of Granville by arrangements with
 
 Goode,
 
 well knew that the former executions had been directed to that sheriff ?
 
 Clanton,
 
 the sheriff of Warren, was one of the persons present, and privy to the enquiry, and he
 
 knew
 
 that the execution then in his hands, was the first that had come to him. The executions had all issued from the court of the adjoining county — the clerk’s office was within a day or a half a day’s ride — the facts were accessible to all interested in the subject, and we have no proof to induce us to believe that these parties were under the slightest mistake with respect to
 
 any of these
 
 facts.— That they were in error with respect to the legal result of these facts, is sufficiently shown. It is unnecessary, however, to enquire whether in any case an agreement may be set aside because founded in such error. The defence is rested on the ground
 
 offraud,
 
 and will not be upheld by proof or error. But if it could, we deem it obvious that the agreement to waive the title under the deed of trust,was not produced
 
 solely
 
 by the convic
 
 *402
 
 tion that such title was bad as against the execution.—
 
 Richard Boyd
 
 was solicitous to make the arrangement, because
 
 Goode
 
 would otherwise, insist on selling the ne-groes for specie, ami being liable on
 
 Alexander Boyd’s
 
 bond, as one of his sureties, he was anxious that the ne-groes should bring full prices. It appears that
 
 Thornton
 
 was reluctant to enter into it, but he yielded according to his own statement, because of the double motive, that he relied on
 
 Goode’s
 
 representation, that the execution had a prior lien, and that as
 
 Richard Boyd
 
 had consented,
 
 he would not be
 
 obstinate. The very arrangement to waive the claim, is evidence that its
 
 invalidity
 
 wa« not
 
 certain.
 
 The stipulation with the plaintiff in regard to the terms on which the property should be sold, if the title were waived, constituted a consideration for that waiver, assuredly of
 
 some,
 
 and possibly of
 
 great
 
 weight.
 
 Richard Boyd
 
 probably, judging from the evidence, would gladly have acceded to thejarrangement, had Mr.
 
 Jones
 
 expressed no opinion upon the question of the title, and it has not been shown that Mr.
 
 Thornton suffered
 
 by yielding his objections to the arrangement, after learning that it was acceptable to
 
 Richard Boyd.
 

 Per Curiam. — Decree in favor of the plaintiff, with costs against the defendants
 
 Boyd
 
 and
 
 Thornton,
 
 who must also pay the costs of the defendants
 
 Hawkins
 
 and Fitts.