ROMER G. TAYLOR v. RAMON A. BRITTAIN AND WIFE, NELLIE TAYLOR
BRITTAIN

No. 8425SC845

(Filed 17 September 1985)

**1. Appeal and Error § 6.2— boundary dispute—partial summary judgment—appealable**

    The Court of Appeals in its discretion entertained an appeal from a partial summary judgment in a special proceeding to determine a disputed boundary even though the trial court merely held that a common corner was marked by a Ford axle and left the location on the ground of the corner for determination by the trier of fact where resolution of the question of the terminus of the parties' common corner effectively resolved the case. G.S. 38-1 *et seq.* (1984).

**2. Reformation of Instruments § 1— deed of correction—not valid**

    A 1982 deed of correction was without legal effect where the grantors of the deed had divested themselves of legal title to the land thirty years before the deed of correction, the rights of third parties in the land were implicated by the correction deed, there was apparently no formal action instituted to reform the original deed, and the applicable statute of limitations barred reformation of the deed. G.S. 1-52(9) (1983).

**3. Boundaries § 15.1— disputed corner—summary judgment improper**

    There was a triable issue of fact and summary judgment was improperly granted for respondent in a special proceeding to determine a disputed boundary where the titles of both parties were derived from deeds referring to an iron stake or an axle corner, a Ford axle was driven into an oak stump during a 1947 survey using 1927 calls, the 1927 deed referred to a Spanish oak, petitioner's evidence was that the Spanish corner was at a different location from the axle corner and that people familiar with the area knew the Spanish oak marked the common corner, a recent surveyor testified that the axle was driven into a red oak tree, respondent's evidence was that the axle corner had been recognized as the common corner since 1947, and a farmer familiar with the land in question testified that the axle was driven into a Spanish oak stump.

**4. Adverse Possession § 2— adversity of possession not shown**

    There was no triable issue of fact by application of the doctrines of adverse possession or color of title in a special proceeding to determine a disputed boundary where respondent's deed purported to give them title to

the land in question, but petitioner had sold some timber off the land, peti-
tioner's cattle used some of the land, and the male respondent stated that he
knew where all the boundary lines were on his land, "all except the problem
we got with this one."

APPEAL by petitioner from *Howell, Judge*. Judgment entered
20 February 1984 in Superior Court, BURKE County. Heard in the
Court of Appeals 4 April 1985.

*Simpson, Aycock, Beyer & Simpson, P.A., by Samuel E. Ay-
cock and Michael Doran, for petitioner appellant.*

*McMurray & McMurray, by John H. McMurray, for respond-
ent appellees.*

BECTON, Judge.

I

This appeal arises from a special proceeding brought under
N.C. Gen. Stat. Secs. 38-1, *et seq.* (1984), by petitioner, Romer
Taylor, to establish the true location of a disputed boundary line
between Taylor's tract of land and an adjoining tract owned by
respondent spouses Nellie Taylor Brittain and Ramon A. Brittain.
The heart of the controversy is the location of a common corner
of the two tracts: Taylor's northwest corner and the Brittain's
southwest corner. The various allegations made and defenses
raised in the numerous pleadings can be distilled thusly: both par-
ties contend that the descriptions in their respective deeds con-
trol; both parties also argue that regardless of deed language,
they are entitled to prevail under theories of either adverse
possession or color-of-title.

The Brittains moved for partial summary judgment to deter-
mine the location of the common corner, contending specifically
that a Ford axle marked the corner in question. The trial court
entered summary judgment in favor of the Brittains. Taylor ap-
peals, arguing that (1) summary judgment was improvidently
granted because the materials presented raised a genuine issue of
material fact as to the location of the boundary line; and (2) the
trial court erred in considering affidavits submitted by the Brit-
tains containing material improper for summary judgment. For
the reasons set forth below, we conclude that summary judgment

was erroneously granted, and we reverse. Therefore, we need not consider Taylor's second assignment of error.

## II

In 1927, Lester Taylor's property was divided into eleven tracts of land pursuant to a special proceeding. Petitioner Romer Taylor's land is part of lot seven. Respondent Brittains' land is lot six. The county commissioners' report in the 1927 proceedings describes the northwest corner of lot seven as "a spanish oak and pointers West of an old road . . ."; it describes the southwest corner of lot six as "a spanish oak and pointers near an old road. . . ."

Respondent Nellie Taylor Brittain (then Nellie Taylor) was allotted lot six in the 1927 proceedings. In 1947, Nellie and Ramon Brittain conveyed lot six in trust, and the trustees reconveyed the property to them as a tenancy by the entirety. Prior to this transfer, the Brittains had the property surveyed to obtain a more accurate description of lot six. Ramon Brittain testified that in making the survey, the surveyor used the description of lot six contained in the 1927 county commissioners' report. The pertinent call in the report stated that the southwest corner of lot six was "44½ poles" from its northwest corner and was marked by the Spanish oak. Mr. Brittain testified that upon measuring the distance called for, the surveyor found that the terminus of the call was located at an old oak stump with a six to seven foot "sucker" (shoot) growing out of it. He testified that, at the direction of the surveyor, he drove a Ford axle into this stump to mark the southwest corner of the property and that the sucker has now grown into a tree around the axle. The 5 December 1947 deed to the Brittains creating the tenancy by the entireties describes the southwest corner of the property as "an iron stake in the line of Lot No. 8. . . ." While the Brittains contend that the surveyor accurately ran the call contained in the 1927 county commissioners' report to the spot where the axle is now located, Taylor maintains that another tree located 65½ feet to the north of the axle is the Spanish oak referred to in the report.

Mae F. H. Lowman acquired lot seven from the original grantee, Lewis Taylor, in 1947. Mr. and Mrs. Lowman conveyed part of this land by deed to petitioner Taylor in 1952. This deed describes the northwest corner of the land as "a Ford axle, Brit-

tain & Lowman's corner. . . ."[1] The northwest corner was the
subject of a deed of correction executed by the Lowmans in 1982.
The corrected deed describes the northwest corner as "a dead
oak stump, Ramon Brittain's southwest corner. . . ." There was
testimony in several affidavits submitted by Taylor that the
Spanish oak is now dead, and the "dead oak stump" in the cor-
rected deed refers to the Spanish oak corner.

## III

Ordinarily, in a special proceeding brought under N.C. Gen.
Stat. Secs. 38-1, *et seq.* (1984), "the only question presented is the
location of the true dividing line," *Lane v. Lane*, 255 N.C. 444, 449,
121 S.E. 2d 893, 898 (1961), title or ownership to land not being
directly at issue. *Pruden v. Keemer*, 262 N.C. 212, 136 S.E. 2d 604
(1964). Particularly, *"[w]hat* are petitioners' lines is determinable
as a matter of law from the calls in the description of their lands.
*Where* these lines are located on the earth's surface is deter-
minable as a matter of fact." *Id.* at 218, 136 S.E. 2d at 608 (em-
phasis added); *accord Combs v. Woodie*, 53 N.C. App. 789, 281 S.E.
2d 705 (1981) (what are termini is question of law; where termini
are is question of fact).

[1] In the case *sub judice*, the Brittains moved "for summary
judgment that the Ford axle in a tree marks the Northwest cor-
ner of [Taylor's] land and the Southwest corner of [Brittains']
land." The trial court held that the common corner was marked
by the Ford axle and left the location on the ground of this corner
for determination by the trier of fact. Although this order was for
partial summary judgment and is interlocutory, its resolution of
the question of the terminus of the parties' common corner effec-
tively resolves this case. We therefore choose to exercise our
discretion and entertain this appeal. *See Brown v. Hodges*, 232
N.C. 537, 61 S.E. 2d 603 (1950) (when court declares where bound-
ary is, and location of boundary is either admitted or uncon-
troverted, the whole inquiry resolves itself into question of law).

Taylor argues that partial summary judgment was erroneous-
ly granted because the Brittains failed to establish the absence of
a genuine issue of material fact and that they were entitled to
judgment as a matter of law. We agree.

---

1. The trial judge deemed this deed controlling in granting summary judgment.

---

---

[2]  The deeds alone are insufficient to satisfy the Brittains' initial burden of proof, even though the 1982 deed of correction was without legal effect. Taylor alleges that this deed, with its reference to the Spanish oak corner as the divisional point between lots six and seven, is the controlling instrument as to his rights in the land, superseding his 1952 deed. Pertinent authority, however, refutes Taylor's position.

> In an action for reformation of a written instrument, the plaintif [sic] has the burden of showing that the terms of the instrument do not represent the original understanding of the parties and must do so by clear, cogent and convincing evidence. . . . Additionally, there is 'a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they agreed and have chosen fit and proper words to express that agreement in its entirety.' . . . This presumption is strictly applied when the terms of a deed are involved in order 'to maintain the stability of titles and the security of investments.'

> *          *          *

> As a general rule, reformation will not be granted if the rights of an innocent bona fide purchaser would be prejudiced thereby.

*Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 651, 653, 273 S.E. 2d 268, 270, 272 (1980) (citations and emphasis deleted); *see Buell Cabinet Co., Inc. v. Sudduth*, 608 F. 2d 431, 434-35 (10th Cir. 1979) ("As against third persons an alleged defective deed can be cured only by a bill in equity, and not by a confirmation assuming to relate back to the original deed." (quoting 26 C.J.S. *Deeds* Sec. 31 (1956) ) ); 26 C.J.S. *Deeds* Sec. 31 (no amending deed when rights of third persons have intervened; also, once grantor has divested self of title, grantor cannot correct a mistake by a subsequent conveyance).

At bar, (1) the Lowman, Taylor's grantors, had divested themselves of legal title to the land thirty years before the second deed, (2) the rights of third parties in the land, the Brittains, were implicated by the correction deed, and (3) there was apparently no formal action instituted to reform the original deed. Further, it appears that the applicable statute of limitations

Taylor v. Brittain

barred Taylor from reforming his deed. *See Huss v. Huss*, 31 N.C. App. 463, 230 S.E. 2d 159 (1976) (applying three year statute of limitations, N.C. Gen. Stat. Sec. 1-52(9) (1983) to action to reform deed on ground of mistake). We conclude that the deed of correction was void. We note that petitioner Taylor's only citation of authority as to the validity of the corrected deed is some general language found in J. Webster, *Real Estate Law in North Carolina* Sec. 466 (Hetrick rev. ed. 1981). Concluding as we do that the corrected deed was without legal effect, we do not reach the Brittains' contention that the 1982 deed, by its reference to "Ramon Brittain's southwest corner," is in the nature of a junior deed and is controlled by the description in the senior deed to which it necessarily refers, the 1947 deed to Nellie and Ramon Brittain.

[3] Once we remove the 1982 deed from our consideration, it appears that the respective titles of both parties are derived directly from deeds describing the controverted corner as the axle corner: the Brittains' 1947 deed uses the phrase "iron stake"; Taylor's 1952 deed refers to a "Ford axle." However, as noted earlier, the 1947 deed was based on a survey made from the 1927 report, which report exclusively referred to the "Spanish oak" in describing the common corner of lots six and seven.

Ramon Brittain testified that during the 1947 survey, when the surveyor measured the distance to the southwest corner of lot seven, by using the 1927 calls, the surveyor's corner was not the Spanish oak, but another oak stump 65½ feet further south, and the surveyor directed Ramon Brittain to drive the Ford axle into the stump at that more southerly location. Taylor contends that the oak stump into which Brittain drove the axle was not the Spanish oak referred to in the 1927 report, but was another oak tree altogether, located 65½ feet south of the Spanish oak.

Evidence in the record supports the positions of both parties. Taylor's evidence tends to show that the Spanish oak corner was at a different location than the axle corner, and people familiar with the area testified that they knew the Spanish oak marked the common corner. Furthermore, in the affidavit submitted by Taylor of a surveyor who did some recent surveying of the disputed line, the surveyor testified that the axle is driven into a red oak tree. The Brittains put on evidence showing that since 1947, the axle corner has been recognized as the common corner.

Theodore Hildebran, who testified that he has farmed the land in question and is familiar with it, further testified that the axle was driven into a Spanish oak stump.

Thus, the issue remains whether the oak stump with the axle or the Spanish oak tree is the Spanish oak intended to be the monument in the 1927 proceeding. This issue is material because if the oak stump with the axle were intended, the Brittains would be entitled to judgment as long as the Taylors failed to establish adverse possession. If the Spanish oak were intended, there would be a conflict in the deed between a natural monument and a distance, and the monument would control. *Brown v. Hodges.* Thus, Taylor would prevail on the deeds alone.

We conclude, then, that whether the Ford axle correctly identified the common corner as described in the 1927 survey, or whether that survey referred to the now-dead Spanish oak 65½ feet north of the axle, is a triable issue of material fact, and must be resolved by a jury.

## IV

[4] On the deeds alone, then, we conclude that the Brittains failed to meet their burden of proof that, as a matter of law, the common corner is marked by a Ford axle. Therefore, the inquiry presents itself whether a lack of any triable issue of fact and entitlement to judgment as a matter of law was made out by application of the doctrines of adverse possession or color-of-title.

"Adverse possession is defined 'as the actual, open, notorious, exclusive, continuous and hostile occupation and possession of the land of another' for the statutory period." *Casstevens v. Casstevens*, 63 N.C. App. 169, 171, 304 S.E. 2d 623, 625 (1983) (quoting Webster, *supra*, Sec. 286). "Adverse possession under 'color of title' is occupancy under a writing that purports to pass title to the occupant but which does not actually do so. . . ." Webster, *supra*, Sec. 294 (rev. ed. 1981); *see First-Citizens Bank & Trust Co. v. Parker*, 235 N.C. 326, 69 S.E. 2d 841 (1952). Adverse possession, to ripen into title after seven years, must be under color of title. N.C. Gen. Stat. Sec. 1-38 (1983). Otherwise, a period of twenty years is required. N.C. Gen. Stat. Sec. 1-40 (1983); *Justice v. Mitchell*, 238 N.C. 364, 78 S.E. 2d 122 (1953). A color-of-title situation can arise when the person executing the writing does not ac-

tually have title. Webster, *supra*, Sec. 294. A deed may constitute color of title for the land therein described. *McDaris v. Breit Bar "T" Corp.*, 265 N.C. 298, 144 S.E. 2d 59 (1965). When a person claims ownership through color of title, as long as that person has some actual possession of a part of the land, he or she is deemed the constructive possessor of the remainder of the land described in the instrument constituting color of title. Webster, *supra*, Sec. 294; *see Carswell v. Morganton*, 236 N.C. 375, 72 S.E. 2d 748 (1952). Finally, and crucial to this case, a deed which is color of title without adverse possession does not afford the grantee protection of the statute. *Morehead v. Harris*, 262 N.C. 330, 337, 137 S.E. 2d 174, 182 (1964).

Applying the law to the case at hand, we conclude that the Brittains have failed to make out a *prima facie* case of adverse possession under color of title. Although their 1947 deed is color of title as it purports to give them title to land in question, sufficient evidence of adverse possession of the land is lacking. In his deposition, Ramon Brittain testified that he moved onto the land in 1969 and lived there continuously since that time. However, he also testified that, at an unspecified time after 1952, Romer Taylor had sold some timber off the land, Taylor had a dairy farm, and Taylor's cattle used some of the land. Further, when asked whether he knew where all the boundary lines were on his land, Brittain replied, "All except the problem we got with this one." In our opinion, this evidence does not demonstrate the requisite adversity of possession. *See generally* Webster, *supra*, Secs. 287-91. Thus, neither on the deeds alone nor pursuant to theories of adverse possession or color-of-title have the Brittains established that they are entitled to judgment as a matter of law.

## V

On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *Durham v. Vine*, 40 N.C. App. 564, 253 S.E. 2d 316 (1979). However, if the movant fails in this showing, summary judgment is not proper regardless of whether the non-movant has responded. *See Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405 (1982). As we have shown, neither by the deeds nor by the other evidence did the movants, Ramon and Nellie Brittain, meet their burden of

proof. Thus, summary judgment should have been denied; and the order is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Judges WEBB and PARKER concur.