PHILIPPE WHITE, AND WIFE, ELIZABETH S. WHITE, PETITIONERS V. ROBERT LEROY FARABEE, UNMARRIED; RICHARD EUGENE RASBERRY, AND SPOUSE, IF ANY; HOSEA R. RASBERRY, UNMARRIED; CHARLES ALBERT ISLEY, JR., AND SPOUSE, IF ANY; ERNEST LEMELL ISLEY, AND SPOUSE, IF ANY; WILLIAM CECIL DOUGLAS ISLEY, AND WIFE, CECELIA ISLEY; RALPH MALCOLM POLLARD, UNMARRIED; EDWINA M. DELONEY, UNMARRIED; FREDERICK A. SMITH, AND WIFE, BERTHA M. SMITH; PATRICIA S. DAY, AND HUSBAND, JOHN W. DAY; JOYCE L. BRASWELL LIVINGSTON, UNMARRIED; KENNETH E. WHITESIDE, AND WIFE, JOAN D. WHITESIDE; STEPHANIE MARIE SIMMONS, UNMARRIED; RICARDO BENNERMAN, UNMARRIED; BRENT F. KING, TRUSTEE; UNITED GENERAL MORTGAGE CORPORATION, NOTEHOLDER; PROPERTY MANAGEMENT SERVICES, INC., JUDGMENT CREDITOR; UNITED STATES OF AMERICA, LIENHOLDER; AND ANY PERSONS AND THEIR SPOUSES, FIRMS OR CORPORATIONS WHO MAY HAVE ACQUIRED ANY INTEREST BY ASSIGNMENT, TRANSFER, SALE, WILL, DEVISE, BEQUEST OR LAWS OF DESCENT AND DISTRIBUTION OR IN ANY MANNER WHATSOEVER, BY, THROUGH, OR UNDER CEOLA ELIZABETH SMITH (SPECIFICALLY INCLUDING BUT NOT LIMITED TO THOSE ACQUIRING SUCH AN INTEREST BY, THROUGH, OR UNDER OZELLA J. SMITH RASBERRY, CHARLOTTE BEATRICE SMITH POLLARD, LEWIS E. SMITH, CARL SHEPARD, WADE SHEPARD AND/OR BOY SMITH, BORN AUGUST 4, 1917), RESPONDENTS

No. COA10-1213

(Filed 17 May 2011)

**1. Appeal and Error— interlocutory orders and appeals— adverse possession—all interests not resolved**

An order addressing the property interests of some of the parties to an adverse possession claim was interlocutory, but the appeal was nevertheless heard, where there were overlapping factual issues between the claims being appealed and those left to be determined in a partition action.

**2. Adverse Possession— color of title—execution and delivery of deeds**

The trial court erred by finding that some of the respondents had acquired title by adverse possession under color of title where four groups of relatives who had been paying property taxes on family property assumed they were the proper owners and exchanged reciprocal deeds dividing the property. Although the date inscribed at the top of the deeds was more than seven years prior to the action, some of the deeds were not signed, and therefore not delivered, until less than seven years before the action.

Appeal by petitioners from order entered 21 April 2010 by Judge Ronald E. Spivey in Guilford County Superior Court. Heard in the Court of Appeals 7 March 2011.

*Robertson, Medlin & Bloss, PLLC, by John F. Bloss, for peti-
tioner-appellants.*

*Land Loss Prevention Project, by Mary E. Henderson and
Jeffrey M. Jandura, for Patricia Day and Kenneth and Joan
Whiteside respondent-appellees.*

*Tuggle Duggins & Meschan, PA, by John R. Barlow, II, and
Michael S. Fox, for Natasha Braswell respondent-appellee.*

McCULLOUGH, Judge.

Petitioners appeal from an order entered by the trial court in
favor of respondents, finding that each of the four respondents had
acquired title to portions of a certain piece of real property by adverse
possession under color of title. After careful review, we reverse.

## I. Background

On 22 June 1961, Ceola Elizabeth Smith ("Ceola") died intestate
seized of a 70-acre parcel of real property located in Guilford County,
North Carolina ("the Ceola Smith Property"). The Ceola Smith
Property is undeveloped, having only a single driveway and no habit-
able buildings. In the years following Ceola's death, certain of her
grandchildren continued to pay the taxes on the Ceola Smith
Property. These grandchildren, comprising four groups of relatives,
were: (1) respondents Patricia Day ("Day") and her husband, John
Day (collectively "the Days"[1]); (2) respondents Frederick Smith, Jr.
("Smith") and his wife, Bertha Smith (collectively, "the Smiths"); (3)
Joyce Livingston ("Livingston"); and (4) respondents Edwina Deloney
("Deloney") and Ralph Malcolm Pollard ("Pollard").

Eventually, these four groups of family members decided to vol-
untarily divide the Ceola Smith Property into four tracts, each owned
by one of the four groups of relatives that had been paying one-fourth
of the property taxes on the Ceola Smith Property since Ceola's
death. Despite their awareness of multiple other heirs of Ceola, these
four groups of relatives assumed they were the only proper owners of
the Ceola Smith Property by virtue of having paid all of the property
taxes in the years following Ceola's death. Accordingly, in June 1998,
these four groups of relatives collectively hired a surveyor to divide
the Ceola Smith Property into four approximately equal parcels, and
employed a lawyer to prepare four reciprocal deeds for those parcels.

---

1. At the time of trial John Day was deceased.

One such reciprocal deed granted the Days an 18.69-acre parcel of the Ceola Smith Property (the "Day tract"). On 4 October 2004, the Days conveyed a 2.00-acre portion of this parcel (the "Whiteside tract") to Day's daughter and son-in-law, respondents Joan and Kenneth Whiteside ("the Whitesides"). Another such reciprocal deed granted Livingston a 20.00-acre parcel of the Ceola Smith Property (the "Livingston tract"). Livingston died intestate on 12 January 2002, and one of her four children, respondent Natasha Braswell ("Braswell"), now claims ownership of the Livingston tract on behalf of her mother's estate.

The four reciprocal deeds all state on their face that they were "made" on 15 December 1998. Day testified during trial that she and her brother, Smith, picked up the unsigned deeds from the preparing lawyer's office some time in December 1998. At one point, Day testified she signed the deeds on that day, after picking them up from the lawyer's office. Day then mailed the deeds for signature to Livingston, Deloney, and Pollard, each of whom lived at different locations in New Jersey.

The signed deeds, bearing the signatures of Livingston, Deloney, and Pollard, were then returned to Day by mail. Upon receipt, Day and the remaining parties to the deeds—her husband John Day and the Smiths—took the deeds to a notary in Guilford County. Day then testified that she and her husband and the Smiths all signed the four deeds before the notary on 1 March 1999 and vouched for the authenticity of the absent parties' signatures. The deeds were then signed and acknowledged by the notary on 1 March 1999, and thereafter recorded at the courthouse.

Prior to the actions by these four groups of family members, in August 1992, petitioner Philippe White ("White") and his wife, Elizabeth White (collectively, "petitioners"), purchased the interest of Nancy Louise Glanz ("Glanz") in several tracts of land, including an undivided tenant-in-common interest in the Ceola Smith Property. When petitioners purchased Glanz's interest in the Ceola Smith Property, they knew that they were purchasing a percentage interest in the entire 70-acre tract, but they did not know at the time the precise percentage of ownership that they were buying. The special warranty deed evidencing the conveyance to petitioners of Glanz's interest in the Ceola Smith Property and the contiguous tracts was recorded on 7 October 1992. White initiated a title search to determine his percentage interest in the Ceola Smith Property, but due to the complexity of ownership by multiple heirs and the costs involved, White suspended the search before getting an answer.

In June 2003, White hired an attorney to try to ascertain the ownership interests in the Ceola Smith Property. Upon studying the tax maps and records, White had discovered the attempted division of the Ceola Smith Property by the four groups of family members. Upon White's request, Day attended a meeting with White and his attorney regarding the ownership interests of the Ceola Smith Property. Day testified she refused to argue about the property interests at the meeting because she had a deed to her parcel and therefore "knew [she] owned it." During the meeting, White made notes listing the names of Ceola's heirs that may have an interest in the Ceola Smith Property for follow-up.

Petitioners initiated the present action by filing a verified petition for partition in Guilford County Superior Court on 30 January 2006. The petition asks that the trial court determine the proportionate interests of the petitioners and the many various respondents and to then partition the property accordingly. On 2 March 2006, respondents Day and her husband and the Whitesides filed a response to the petition for partition. In their response, Day and the Whitesides asserted a counterclaim, alleging that they had acquired all right, title, and interest in 18.69 acres of the Ceola Smith Property by adverse possession under color of title. On 8 February 2008, respondent Braswell filed a response to the petition for partition denying the title of petitioners.

The parties stipulated prior to trial that the family members who executed the reciprocal deeds in 1998 were not the complete and proper heirs to the Ceola Smith Property—only Deloney, Pollard, and Livingston actually owned any interest in the Ceola Smith Property at that time. Prior to executing the reciprocal deeds, the Days and the Smiths had no actual interest in the Ceola Smith Property. Unknown to them at the time the reciprocal deeds were executed, the father of Day and Smith had deeded his interest in the Ceola Smith Property to some of the other family members, thereby eliminating their interest in the Ceola Smith Property.

The matter came on for trial on 4 March 2010 on the sole issue of the claims of respondents Day, the Whitesides, and Braswell that they are the sole owners, by reason of adverse possession under color of title, of three tracts consisting of approximately 38.69 acres of the Ceola Smith Property. Based on the evidence adduced at trial, the trial court entered an order on 21 April 2010 finding that respondents Day, the Whitesides, and Braswell each owned title to their respective parcels by adverse possession under color of title. Petitioners appeal.

## II. Interlocutory nature of appeal

**[1]** The order being appealed in the present case is interlocutory, as it only addresses the counterclaims asserted by respondents Day and the Whitesides, as well as their and respondent Braswell's interests in the subject Ceola Smith Property, leaving for determination the interests of petitioners and the remaining respondents in the subject Ceola Smith Property for partition. An order is interlocutory if "it 'does not dispose of the case, but leaves it for further action for the trial court in order to settle and determine the entire controversy.' " *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 24, 376 S.E.2d 488, 490 (1989) (quoting *Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950)). " 'Generally, there is no right of immediate appeal from interlocutory orders and judgments.' " *Plomaritis v. Plomaritis*, ___ N.C. App. ___, ___, 684 S.E.2d 702, 704 (2009) (quoting *State v. Sanchez*, 175 N.C. App. 214, 215-16, 623 S.E.2d 780, 781 (2005)).

However, there are two circumstances in which a party may appeal an interlocutory order. *Atkins v. Peek*, 193 N.C. App. 606, 609, 668 S.E.2d 63, 65 (2008). "The first exception applies where the order represents a '"final judgment as to one or more but fewer than all of the claims or parties" and the trial court certifies in the judgment that there is no just reason to delay the appeal.' " *Id.* (quoting *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994)). Second, "a party may appeal an interlocutory order where delaying the appeal will irreparably impair a substantial right of the party." *Id.*

Our Supreme Court has stated, "It is usually necessary to resolve the question [of whether a substantial right is affected] in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982) (internal quotation marks and citation omitted). However, this Court has related the general proposition that, "so long as a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right if there are overlapping factual issues between the claim determined and any claims which have not yet been determined." *Davidson*, 93 N.C. App. at 26, 376 S.E.2d at 492.

In the present case, the first exception allowing appeal of an interlocutory order does not apply, as the trial court did not certify the order for appeal pursuant to Rule 54(b). However, under the circumstances of this case, we find that delaying the appeal would affect a substantial right of the petitioners. The trial court's order deter-

mines only the rights of certain respondents in the subject property. Going forward, the trial court must now decide the rights of all remaining respondents and of petitioners in the subject property, and then make a partition based on that determination. The rights of the various respondents in the Ceola Smith Property will ultimately affect petitioners' proportionate interest in the property and the resulting partition. As such, the partition hearing will rely on facts found in the order being appealed in the present case. Therefore, there exist overlapping factual issues between the claims being appealed and those left to be determined in petitioners' partition action. Accordingly, we address the merits of the arguments raised by petitioners in this appeal.

### III. Standard of review

Where, as here, trial is by judge rather than by jury, "[t]he trial judge acts as both judge and jury and considers and weighs all the *competent* evidence before him. If different inferences may be drawn from the evidence, the trial judge determines which inferences shall be drawn and which shall be rejected." *In re Estate of Trogdon*, 330 N.C. 143, 147-48, 409 S.E.2d 897, 900 (1991) (citation omitted).

"In a bench trial in which the superior court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*."

*Hanson v. Legasus of North Carolina, LLC*, ___ N.C. App. ___, ___, 695 S.E.2d 499, 501 (2010) (quoting *Hinnant v. Philips*, 184 N.C. App. 241, 245, 645 S.E.2d 867, 870 (2007)).

### IV. Effective date of deed for color of title

[2] Petitioners first argue the trial court erred in concluding that respondents obtained color of title to the property at least seven years before the filing of the present action. Petitioners contend the undisputed evidence adduced at trial establishes that the deeds to Day and Livingston, under which Day, the Whitesides, and Braswell claim color of title, were not fully executed nor delivered prior to 1 March 1999, when the Days and the Smiths appeared before the notary. Petitioners maintain that because the deeds to Day and Livingston were not fully executed and delivered prior to 30 January

1999—seven years before the date petitioners commenced the present action—the claims of respondents must fail as a matter of law. We agree.

"In North Carolina, '[t]o acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period[.]' " *Jones v. Miles,* 189 N.C. App. 289, 292, 658 S.E.2d 23, 26 (2008) (quoting *Merrick v. Peterson,* 143 N.C. App. 656, 663, 548 S.E.2d 171, 176 (2001)); *see also Federal Paper Board Co. v. Hartsfield,* 87 N.C. App. 667, 671, 362 S.E.2d 169, 171 (1987) (holding that "[t]itle to land may be acquired by adverse possession when there is actual, open, notorious, exclusive, continuous and hostile occupation and possession of the land of another under claim of right or color of title for the entire period required by the statute.") (internal quotation marks and citation omitted)). Ordinarily, adverse possession of privately owned property must be maintained for twenty years in order for the claimant to acquire title to the land. N.C. Gen. Stat. § 1-40 (2009). However, by statute, when the claimant's possession is maintained under an instrument that constitutes "color of title," the prescriptive period is reduced to seven years. N.C. Gen. Stat. § 1-38(a) (2009).

Color of title is bestowed by an instrument that purports to convey title to land but fails to do so:

> "Color of title may be defined to be a writing, upon its face professing to pass title, but which does not do it, either from a want of title in the person making it or the defective mode of conveyance which is used; and it would seem that it must not be so obviously defective that no man of ordinary capacity could be misled by it."

*Bond v. Beverly,* 152 N.C. 56, 61, 67 S.E. 55, 57 (1910) (quoting *Tate v. Southard,* 10 N.C. 119, 121 (1824)); *see also First-Citizens Bank & Trust Co. v. Parker,* 235 N.C. 326, 332, 69 S.E.2d 841, 845 (1952); *New Covenant Worship Ctr. v. Wright,* 166 N.C. App. 96, 105, 601 S.E.2d 245, 252 (2004). It is well established that "a deed may constitute color of title" to the land described therein. *McManus v. Kluttz,* 165 N.C. App. 564, 568, 599 S.E.2d 438, 443 (2004); *see also Nichols v. York,* 219 N.C. 262, 271, 13 S.E.2d 565, 570 (1941) ("[T]he rule is broadly stated in a very large number of decisions that a deed purporting to convey the land in controversy will give color of title to a possession taken under it, even though it be void."); *Marlowe v.*

*Clark,* 112 N.C. App. 181, 186, 435 S.E.2d 354, 357 (1993). "When the deed is regular upon its face and purports to convey title to the land in controversy, it constitutes color of title . . . . It is immaterial whether the conveyance actually passes the title. It is sufficient if it appears to do so." *Lofton v. Barber,* 226 N.C. 481, 484, 39 S.E.2d 263, 264 (1946) (emphasis added). " 'Colorable title, then, in appearance is title, but in fact is not[.]' " *Nichols,* 219 N.C. at 271, 13 S.E.2d at 570 (quoting *Neal v. Nelson,* 17 N.C. 393, 23 S.E. 438 (1895) (emphasis added).

Under North Carolina law, when a deed is relied upon as color of title, the seven-year prescriptive period ordinarily does not begin to run until the date the deed is recorded. *Foreman v. Sholl,* 113 N.C. App. 282, 289, 439 S.E.2d 169, 174 (1994). However, "[w]here . . . the adverse claimant and the opposing party derive their title from independent sources, as is the case here, recordation is irrelevant, and the seven-year period begins to run when the adverse claimant obtains color of title and that does not occur until the conveyance, if a deed, is delivered." *Id.* at 290, 439 S.E.2d at 174 (citation omitted). "The date recited in a deed . . . is at least *prima facie* evidence that the instrument was executed and delivered on such date." *Sandlin v. Weaver,* 240 N.C. 703, 706, 83 S.E.2d 806, 808 (1954) (internal quotation marks and citations omitted); *see also Williams v. Board of Education,* 284 N.C. 588, 598, 201 S.E.2d 889, 895 (1974). As such, " '[a] deed is presumed to have been delivered at the time it bears date[.]' " *Williams,* 284 N.C. at 599, 201 S.E.2d at 896 (quoting *Kendrick v. Dellinger,* 117 N.C. 491, 493, 23 S.E. 438, 438 (1895)). "Evidence to the contrary, however, may negate or neutralize this presumption." *Id.* at 598, 201 S.E.2d at 895.

Our Supreme Court has explained that:

> The execution of a deed means the making thereof, and includes all acts which are necessary to give effect thereto.
>
> . . . *The delivery of a deed is the final act of its execution.* It is that which gives it force and effect, and without which, it is a nullity. When a deed is said to be executed, the meaning is, that, *with all the other requisites,* it has been delivered by the one party to, or for, the other.

*Turlington v. Neighbors,* 222 N.C. 694, 697, 24 S.E.2d 648, 650 (1943) (emphasis added) (internal quotation marks and citations omitted). Our Supreme Court has also held that "there is a delivery of a deed when, signed and sealed, it is put out of the possession of the

maker."[2] *Lynch v. Johnson*, 171 N.C. 611, 613, 89 S.E. 61, 61 (1916) (internal quotation marks and citation omitted). Accordingly, and crucial to this case, delivery of a deed, for purposes of beginning the prescriptive period for adverse possession under color of title, cannot occur until the deed is signed by all of its grantors. Otherwise, the deed is neither fully executed nor "regular upon its face," *Lofton*, 226 N.C. at 484, 39 S.E.2d at 264, and such a deed cannot constitute color of title, as without all the requisite signatures by its grantors, it is "plainly and obviously defective." *Tate*, 10 N.C. at 121.

In the present case, the trial court concluded the deeds to Day and Livingston constitute color of title based on the fact that "the relatives who executed the four reciprocal deeds were not the complete and proper heirs" to the Ceola Smith Property. The evidence shows that certain of the grantors/grantees—the Days and the Smiths—were strangers to the title in that they had no actual interest in the Ceola Smith Property at the time the deeds were executed. In addition, the other grantors/grantees—Livingston, Pollard, and Deloney—only held interests in the Ceola Smith Property as tenants in common with other heirs to the property who did not join in the execution of the reciprocal deeds. Therefore, because the deeds were executed by a group of persons failing to have full and complete title to the property, the deeds fail to actually convey the land as described in the deeds. "A color-of-title situation can arise when the person executing the writing does not actually have title." *Taylor v. Brittain*, 76 N.C. App. 574, 580-81, 334 S.E.2d 242, 246 (1985), *modified and aff'd*, 317 N.C. 146, 343 S.E.2d 536 (1986). However, unless the deeds to Day and Livingston were executed and delivered to them prior to 30 January 1999—seven years before the date the present action was filed—the claims of respondents fail as a matter of law.

Petitioners challenge the trial court's conclusion that the deeds at issue were delivered, and therefore became operative as color of title, on 15 December 1998—the date recited in the deeds. Petitioners contend that the evidence shows the deeds were not signed by all of the grantors until the Smiths and the Days appeared before the notary on 1 March 1999. Therefore, petitioners argue, because delivery of a deed cannot occur before it is signed by its grantors, the deeds could not have been delivered prior to that date and the trial court erred in concluding otherwise.

---

2. We note the requirement of a seal by the signatory has since been abrogated by statute. N.C. Gen. Stat. § 39-6.5 (2009).

Here, the trial court's order makes no finding of fact as to the date of delivery of the four reciprocal deeds. Rather, the trial court's order relies on the presumption that a deed is delivered on the date inscribed at the top of the document. In its conclusions of law, the trial court states:

> Sufficient evidence has been presented to establish that [respondents] ha[ve] possessed the property under color of title pursuant to the deed since 15 day of December, 1998, as the face of the deed states. "The date recited in the beginning of a deed is prima facie evidence that [it] was delivered on that date." *Williams v. North Carolina State Board of Education*, 284 N.C. 588, 598; 201 S.E.2d 889 (1974). "A deed is presumed to have been delivered at the time it bears date unless the contrary is satisfactorily shown." *Kendrick v. Dellinger*, 117 N.C. 491, 23 S.E. 438 (1895).

Petitioners note that "[e]vidence to the contrary, however, may negate or neutralize this presumption." Williams, 284 N.C. at 598, 201 S.E.2d at 895. Petitioners contend that because Day admitted that the deeds were not fully executed until 1 March 1999, the presumption on which the trial court relied was "neutralized."

The only evidence, other than the four deeds themselves, before the trial court regarding the execution of the deeds was Day's testimony. Day's testimony was inconsistent regarding the details of the execution of the deeds. On the one hand, Day testified that she signed the deeds on the day she picked them up from the lawyer's office, and then she placed the deeds in the mail for signature by the other relatives. At other times she testified that she, along with her husband John Day and the Smiths, signed the deeds in the presence of the notary, after the deeds were returned to her by mail, having already been signed by the other relatives.

However, Day's testimony unequivocally establishes that her husband John Day and the Smiths—three of the grantors listed on Livingston's deed, and two of the grantors listed on Day's deed—did not sign the deeds until 1 March 1999 when they appeared before the notary. As delivery is "the final act" of execution of a deed, *Neighbors*, 222 N.C. at 697, 24 S.E.2d at 650, the deeds could not have been fully executed and delivered prior to 1 March 1999 because the requisite signatures were not complete until that date. *See Lynch*, 171 N.C. at 611, 89 S.E.2d at 61. Although the Days and the Smiths had no actual interest in the Ceola Smith Property at the time the deeds were executed, the deeds reflected on their face that the signatures of all the

**WHITE v. FARABEE**

[212 N.C. App. 126 (2011)]

grantors, including the Days and the Smiths, were required for the conveyance. As such, we find that "a person of ordinary capacity, but not skilled in the law," would find the deed defective on its face without those signatures. *Burns v. Stewart*, 162 N.C. 360, 365, 78 S.E. 321, 323 (1913).

Because the uncontroverted evidence shows the date on which the deeds were finally executed by all the grantors was 1 March 1999, the deeds could not operate as color of title until that date. Accordingly, the tolling of the seven-year prescriptive period for adverse possession under color of title did not begin to run until 1 March 1999—less than seven years prior to the bringing of this action by petitioners. As such, respondents' claims of adverse possession under color of title must fail as a matter of law, and the trial court erred in concluding otherwise. The order of the trial court finding that each of the four respondents had acquired title to their respective tracts by adverse possession under color of title must therefore be reversed.

Because we reverse the trial court's order on this issue, we need not address petitioners' remaining arguments.

## V. Conclusion

We hold that the evidence presented at trial was sufficient to overcome the presumption that the deeds at issue in the present case were delivered on the date appearing in the deed. The uncontroverted evidence shows that at least three of the seven grantors signed the deeds in the presence of the notary on 1 March 1999. Because a deed cannot be delivered before it is signed by its grantors, the deeds at issue could not have been delivered until 1 March 1999. Accordingly, because respondents have not maintained color of title for at least seven years prior to petitioners instituting the present action, their claims of adverse possession under color of title fail as a matter of law. Accordingly, the trial court's order must be reversed.

Reversed.

Chief Judge MARTIN and Judge McGEE concur.