R. W. CLARY ET ALS. v. S. H. HATTON ET AL.

(Filed 9 March, 1910.)

### 1. Tenants in Common—Adverse Possession—Ouster—Evidence.

Tenants in common hold their estate by unity of possession, and the possession of one inures to the benefit of his cotenants, not only as concerns themselves, but also as to strangers; and while a tenant in common in possession may so act as to amount to an actual ouster of his cotenants and put them to their act of ejectment, it must be clear, positive, and equivalent to an open denial of the cotenants' rights, and to putting them out of seizin.

### 2. Same—Presumptions—Rebuttal.

When the sole adverse possession of one as tenant in common is relied on to establish title by his heir at law, his declarations while in possession are competent evidence as against himself or those claiming under him to explain and qualify his possession and to show its true character; and when there is evidence that he had thus said eight years before his death that he only claimed certain interest in the *locus in quo* as tenant in common, and that his sisters owned the other interests, it would tend to rebut any presumption of an ouster at any time prior to such declarations.

APPEAL from *Cooke, J.,* at December Term, 1909, of MARTIN.

Proceeding in partition. The plaintiffs allege that they are tenants in common with defendants of the town lot described; that S. R. Clary as sole heir of Sarah Clary is entitled to one-third undivided interest; that the other plaintiffs, W. A. Ellison, S. H. Ellison, J. R. Ellison, Susan Roberson and Belle Goddard, are entitled to one-third as the heirs of Belle Ellison, and that defendants S. H. Hatton and Mary B. Gurganus are entitled to one-third as the heirs of John Hatton.

The defendants pleaded sole seizin. At conclusion of plaintiffs' evidence, motion to nonsuit was sustained. Plaintiffs excepted and appealed.

*Harry W. Stubbs* for plaintiffs.
*Martin & Critcher* and *Winston & Everett* for defendants.

BROWN, J. It is admitted in the pleadings that the lot in controversy is situated in the town of Williamston, that it is known as the Hatton place, and that Samuel Hatton, the common ancestor of plaintiffs and defendants, remained in possession until his death.

It is admitted in the record that Samuel Hatton and his wife, Susan, left three children, John H. Hatton, Sarah Clary and Belle Ellison. It is further admitted that S. R. Clary, one of the plaintiffs, was the only son and heir at law of Sarah Hatton, who afterwards intermarried with R. W. Clary, and that the said Sarah Hatton was the daughter of Samuel and Susan Hatton; that the other plaintiffs are the only children and heirs at law of Belle Hatton, who afterwards intermarried with J. H. Ellison, and that she, also, was the daughter of Samuel and Susan Hatton; that the defendants S. H. Hatton and Mary B. Gurganus are the only children and heirs at law of John H. Hatton, who was the brother of the said Belle Ellison and Sarah Clary and the only son of Samuel and Susan Hatton.

There is evidence tending to prove that Samuel Hatton and his wife Susan and children aforesaid resided on this lot for ten years up to Samuel Hatton's death, in 1863; that this occupation as a residence was continued by his widow and children after his death; that the widow continued to reside there for twenty years up to her death in 1872; and that from 1872 to his death in 1908 John Hatton, the defendant's father, continued to reside there. Since his death the defendants, his children, have been in possession. This proceeding was instituted 8 April, 1909.

The evidence of continuous occupation by Samuel Hatton and his successors up to the date of this proceeding is more than sufficient to put title out of State, even if such evidence be necessary, in a proceeding of this kind, where sole seizin is pleaded and the defendants claim title and right of possession to the whole property. We think that the only question presented relates to the character of John Hatton's possession from death of his mother in 1872 up to the time of his death. Is there evidence sufficient to go to the jury that John Hatton's possession was permissive and inured to the benefit of his sisters; or was it adverse, so that the law will presume such an ouster as would have enabled his cotenants to bring ejectment against him?

It is elementary that tenants in common hold their estates by unity of possession, and that the possession of one inures to the benefit of all his cotenants, not only as concerns themselves, but also as to strangers. 2 Blackstone, 192.

Nevertheless, one tenant in common may hold such possession

CLARY v. HATTON.

of the common property as will amount to an actual ouster of his cotenants, so as to put them to their action in ejectment to be let into possession. But such possession, in order to have that effect, must be manifested by some clear, positive and unequivocal act equivalent to an open denial of the cotenants' rights, and to putting them out of the seizin. These principles of law are so fully and learnedly discussed by *Mr. Justice Walker* in the recent case of *Dobbins v. Dobbins,* 141 N. C., 213, that it is useless to further elaborate them.

We think there is abundant evidence to go to the jury that the possession of defendant's ancestor, John Hatton, was never adverse to the rights of his sisters, or to these plaintiffs, and that, consequently, he acquired no title by reason of his possession after his mother's death in 1872 up to his own death in 1908.

The evidence tends to prove that John Hatton's possession was the continuation of that of his parents; that no deed can be found under which he claims; that he told one Keith eight years before he died, and while he was then living on the lot, that he only claimed or owned one-third of the lot, and his sisters each owned a third, and for that reason he had not improved it and did not wish to spend any money on it.

These declarations of John Hatton are inconsistent with a claim of sole ownership or exclusive possession, and are competent, not to impeach any title that he had already acquired by twenty years' possession, but to show that in reality he had never acquired any title by such possession, because his possession during the entire period it continued, from 1872 to the day the declaration was made, was of a permissive and not of an adverse character; and that it was with his sisters' consent. This would tend to rebut any presumption of an ouster at any time prior to such declaration.

John Hatton could have remained there a century, had he lived so long, with the consent of his sisters, and acknowledging their title, without putting them to an action to assert their rights. As long as he acknowledged their title they had no cause of action.

The declarations of John Hatton, made eight years before his death in 1908, and while he lived on the property, qualified and explained his entire previous possession. His declaration in 1900 in acknowledgment and recognition of his sisters' title, is evidence that prior to then he had never claimed adversely to them. It is elementary learning that the declarations and conduct of a person in possession of land are always competent

as against himself or those claiming under him to explain and qualify his possession and to show what was the true character of such possession.

Professor Greenleaf says: "In regard to the declarations of persons in possession of land, explanatory of the character of their possession, there has been some difference of opinion; but it is now well settled that declarations in disparagement of the title of the declarant are admissible as original evidence. Possession is *prima facie* evidence of seizin in fee simple; and the declaration of the possessor, that he is tenant to another, it is said, makes most strongly against his own interest, and therefore is admissible." 1 Greenleaf on Evidence, sec. 109; 9 Am. and Eng., p. 8; *Yeates v. Yeates,* 76 N. C., 142; *Kirby v. Masten,* 70 N. C., 540; *Hilliard v. Phillips,* 81 N. C., 104.

We are of opinion that his Honor erred in sustaining the motion to nonsuit.

New trial.