Collier v. Welker

---

JAMES O. COLLIER AND JULIET W. COLLIER v. CLAY L. WELKER, SHARON H. WELKER, J. RALPH HOBBS, ALICE W. HOBBS, CHARLES PARKER, ETHEL PARKER AND JOHN F. COMER

No. 7318SC248

(Filed 24 October 1973)

1. **Adverse Possession § 7— tenant in common against cotenant — ouster**

	One tenant in common cannot adversely possess without an ouster, either actual or constructive, of his co-owners.

2. **Adverse Possession § 7— tenant in common against cotenant — appropriation of rents and profits — ouster**

	Even where a co-owner appropriates rents and profits for his sole benefit, silent occupation and exclusive use of the entire property does not qualify as actual ouster absent a demand for accounting by the excluded tenants in common.

3. **Adverse Possession § 7— tenant in common against cotenant — notice of intent to dispossess**

	One cotenant cannot be deprived of his rights by another cotenant unless he has actual or constructive notice of the cotenant's intent to dispossess.

4. **Adverse Possession § 7— tenant in common against cotenant — presumption of ouster — no demand for accounting**

	Ouster is presumed if one tenant in common and those under whom he claims have been in sole and undisturbed possession and use of land for 20 years when there has been no demand for rents, profits or possession.

5. **Adverse Possession § 7— tenant in common against cotenant — no demand for accounting**

	The evidence was sufficient to go to the jury on the issue of whether plaintiff tenants in common obtained the interest of a cotenant by adverse possession where it tended to show that plaintiffs and those under whom they claim have been in exclusive and peaceable possession of the property for more than twenty years without an account to or claim by the cotenant.

APPEAL by defendants from *Seay, Judge,* 21 August 1972 Session of Superior Court held in GUILFORD County.

In this action, instituted on 27 October 1971, plaintiffs seek to have themselves declared the sole owners of a tract of land in Guilford County. Defendants, Clay L. Welker and Sharon H. Welker, are the record owners of a one-fourth undivided interest in the tract and plaintiffs, James O. Collier and Juliet W. Collier, claim that one-fourth interest by virtue of adverse possession for more than twenty years.

Plaintiffs' evidence tended to show the following. Benjamin Parker, Ethel Parker, Charles Parker and Mary Novia Parker were the owners of a farm which included a forty-acre tract. In 1949, Charles and Ethel Parker conveyed their respective one-fourth interests in the forty-acre tract to Benjamin Parker. The owner of the remaining one-fourth interest, Mary Novia Parker, was incompetent, and, by deed dated 13 December 1950, her guardian conveyed her one-fourth interest to defendant Clay Welker. Later in December of 1950, Benjamin Parker conveyed his three-fourths interest in a portion of the forty-acre tract to Welker, and that part of the tract is not the subject of this law suit.

In 1963, Benjamin Parker purported to convey the entire interest in the remainder of the forty-acre tract (amounting to some 32 acres and being the subject of this suit) to J. Ralph Hobbs, although he only owned a three-fourths interest in the tract, the defendant Welker owning the remaining one-fourth. Benjamin Parker died in 1964. In 1966, Hobbs purportedly conveyed the whole interest in the tract to plaintiffs.

The property in dispute fronts to the South on Alamance Church Road. The property shares its western border with another tract owned by the Parker family, known as Ethel Parker's Place. The property had belonged to the Parker family for many years. From 1950 to 1955, Benjamin Parker had used part of the disputed property to produce tobacco, vegetables, including corn, and grain, and he had also harvested and sold timber from the land. From 1955 to 1959, Charles Parker farmed part of the property and had continued to produce crops similar to those Benjamin Parker had cultivated. From 1950 to 1963, David Hodgin sharecropped on part of the Parker property not cultivated by Benjamin Parker or Charles Parker. He continued to rent the property and farm it after it was transferred to Hobbs in 1963 and finally to Collier in 1966. During the 1950's and early 1960's, several families had intermittently rented an old house located on the disputed property from Benjamin Parker, and after 1966, the windows and doors were repaired and the house used for storage through 1970.

Collier testified that in June 1970, he began building a home on the property. The house was completed in September 1971. On 10 August 1970, plaintiff received a letter from Welker's attorney advising that Welker claimed a one-fourth undivided interest in the property. At this time, the exterior of the house

had been completed, and plaintiffs had already invested $20,000.00 in the construction. The total cost of the house, excluding that of the land, was $40,000.00. Plaintiff denied any knowledge of Welker's alleged interest in the property and stated Welker had never made any demands or claims consistent with that interest. Welker lived about one-fourth of a mile from the property.

Testifying in his own behalf, defendant acknowledged that he was aware that Benjamin Parker farmed the property but claimed that the usage of the land did not change over the years. Regarding his intentions with respect to the property, defendant stated:

> "When we bought the property, we have (sic) no intention of ever farming it. We bought it more to do a favor when they sold the part that was conveyed to settle up the estate. We bought the property, not intending, and I still don't intend, to ever do anything with it adverse to Uncle Ben Parker or Miss Ethel."

The case was tried on the question of whether plaintiffs have obtained the outstanding one-fourth interest in the thirty-two acre tract by adverse possession against the record owners, the Welkers. The jury answered the issue in favor of plaintiffs, and defendants, Clay L. Welker and Sharon H. Welker, appealed.

*Smith, Patterson, Follin & Curtis by Marion G. Follin III for plaintiff appellees.*

*Douglas, Ravenel, Hardy & Crihfield by Robert D. Douglas III for defendant appellants.*

VAUGHN, Judge.

Defendants' motions for a directed verdict at the close of plaintiffs' evidence and at the close of all the evidence and their motion for judgment notwithstanding the verdict were denied. The question presented by defendants' motions for directed verdict is whether the evidence, when considered in the light most favorable to plaintiff, is sufficient for submission to the jury. This is substantially the same question formerly presented by a motion for nonsuit. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396. Although defendants failed to specifically designate the insufficiency of plaintiffs' evidence as the ground for the motion for directed verdict, that is obviously the question they

sought to raise. In this instance we have, in our discretion, considered the question thus presented on its merits.

[1] Plaintiffs Collier possessed the property as tenants in common with the defendants, as had J. Ralph Hobbs and Benjamin Parker through whom plaintiffs claim. Because the nature of the relationship between tenants in common precipitates an assumption in law that cotenants will be "true to each other, the possession of one is the possession of all" with the result that any one of them "is supposed to protect the right of his fellows." *Cox v. Wright*, 218 N.C. 342, 349, 11 S.E. 2d 158, 162, *quoting Day v. Howard*, 73 N.C. 1. Accordingly, our courts have long maintained that one tenant in common cannot adversely possess without an ouster, either actual or constructive, of his co-owners. *E.g., Brewer v. Brewer*, 238 N.C. 607, 78 S.E. 2d 719; *Cox v. Wright, supra.*

[2, 3] Even where a co-owner appropriates rents and profits for his sole benefit, silent occupation and exclusive use of the entire property does not qualify as actual ouster, absent a demand for accounting by the excluded tenants in common. *Cox v. Wright, supra; Clary v. Hatton*, 152 N.C. 107, 67 S.E. 258; *Dobbins v. Dobbins*, 141 N.C. 210, 53 S.E. 870; *Bullin v. Hancock*, 138 N.C. 198, 50 S.E. 621. This position is consistent with the general precept that, regardless of a conflicting rule with respect to persons who are not joint owners, "the entry and possession of one tenant in common are presumed not to be adverse to his cotenants." 4 Thompson, Real Property (1961 Replacement), § 1810, p. 204. The lack of a presumption of adversity as between tenants in common is particularly significant in view of the fact that possession is not adverse unless it is, among other things, notorious. *Newkirk v. Porter*, 237 N.C. 115, 74 S.E. 2d 235; *Locklear v. Savage*, 159 N.C. 236, 74 S.E. 347. One cotenant may not be deprived of his rights by another cotenant unless the allegedly disseized has actual knowledge or constructive notice of a co-owner's intent to dispossess. As the court noted in *Clary v. Hatton, supra*, the adverse nature of a cotenant's possession must be "manifested by some clear, positive and unequivocal act equivalent to an open denial of the co-tenants' rights, and putting them out of seizin." Ordinarily, a particular action or activity falls outside the purview of this test unless it exposes the actor to an action by the cotenants for a breach of fealty. *Cox v. Wright, supra; Clary v. Hatton, supra; Dobbins v. Dobbins, supra; Page v. Branch*, 97 N.C. 97, 1 S.E.

625. *See* Webster, Real Estate Law in North Carolina §§ 260 (a) and (b).

[4] Although ouster is required to support a cotenant's claim of adverse possession, our courts have favorably acknowledged the concept of constructive ouster. Ouster is presumed if one tenant in common and those under whom he claims have been in sole and undisturbed possession and use of the land for twenty years when there has been no demand for rents, profits or possession. *Morehead v. Harris,* 262 N.C. 330, 137 S.E. 2d 174; *Brewer v. Brewer, supra; Battle v. Battle,* 235 N.C. 499, 70 S.E. 2d 492; *Williams v. Robertson,* 235 N.C. 478, 70 S.E. 2d 692; *Crews v. Crews,* 192 N.C. 679, 135 S.E. 784; *Lester v. Harward,* 173 N.C. 83, 91 S.E. 698; *Lumber Co. v. Cedar Works,* 165 N.C. 83, 89 S.E. 982; *Shannon v. Lamb,* 126 N.C. 38, 35 S.E. 232. Upon completion of the requisite 20-year period, ouster relates back to the initial taking of possession. *Cox v. Wright, supra; Lumber Co. v. Cedar Works, supra; Dobbins v. Dobbins, supra;* 1 Mordecai Law Lectures, Chapter XVII, p. 624. Not only does 20 years of exclusive possession raise a presumption of ouster, but it also supplies all the elements necessary to support a finding that the possession was adverse and included elements of notice and hostility. The rule is clearly set forth in *Dobbins v. Dobbins, supra:*

> "We have thus reviewed this subject to show the nature of an ouster, and in order that we may understand clearly what it is the law means when it is said to presume an ouster. It is a disseizin by one tenant of his cotenant, the taking by one of the possession and holding against him by an act or series of acts which indicate a decisive intent and purpose to occupy the premises to the exclusion and in denial of the right of the other. *This is what the law presumes, whether it be in exact accordance with the real facts or not.* It is a presumption the law raises to protect titles, and answers in the place of proof of an actual ouster and a supervening adverse possession. *The presumption includes everything necessary to be proved when the title can be ripened only by actual adverse possession as defined by this Court. . . ."* (Emphasis added.)

The rule of a presumption of rightful possession after 20 years is designed "to prevent stale demands" from those who have slept on their rights for so long a period and "to protect pos-

sessors from the loss of evidence from lapse of time." *Black v. Lindsay*, 44 N.C. 467, *quoted in Dobbins v. Dobbins, supra.*

[5] The evidence was sufficient to permit a finding that plaintiffs and those under whom they claim had been in exclusive and peaceable possession, without an account to or claim by defendant, for more than twenty years prior to institution of the action. Under the presumption so often repeated in the cases cited, that evidence was sufficient to permit the case to go to the jury and sustain the verdict.

We have considered defendants' assignments of error directed at the charge to the jury and find nothing so prejudicial as to require a new trial.

No error.

Chief Judge BROCK and Judge MORRIS concur.