GRACE H. CASSTEVENS (WIDOW); MARTHA JANE CASSTEVENS, SINGLE; DOROTHY JEAN C. KING AND HUSBAND, FRED F. KING; VIOLA K. CASSTEVENS (WIDOW); AND HELEN BETH C. CLARK AND HUSBAND, PAUL GENE CLARK v. THELMA S. CASSTEVENS (WIDOW); HAROLD H. CASSTEVENS AND WIFE, WILMA C. CASSTEVENS; JAY THAD CASSTEVENS AND WIFE, JACQUELINE B. CASSTEVENS; NELSON M. CASSTEVENS, SR., AND WIFE, ETHEL C. CASSTEVENS; NELSON M. CASSTEVENS, JR., AND WIFE, BARBARA T. CASSTEVENS; NORA S. SPROUSE (WIDOW); JAY CASSTEVENS, EXECUTOR OF THE ESTATE OF MARVIN HUGH SPROUSE

No. 8223DC607

(Filed 5 July 1983)

Adverse Possession § 25.2— constructive ouster—letters from petitioner and attorneys as tolling statute of limitations

Respondents failed to prove adverse possession under G.S. 1-40 where several letters from one of the petitioners and from their attorney were sufficient to toll the running of the adverse possession statute. The letters were sufficient to be construed as a demand for rents, profits or possession, and in North Carolina, such was sufficient to prevent a constructive ouster.

APPEAL by petitioners from *Ferree, Judge.* Judgment entered 8 April 1982 in District Court, YADKIN County. Heard in the Court of Appeals 20 April 1983.

This is a special proceeding for sale of lands for partition among tenants in common filed by the petitioners. In their answer, the respondents alleged sole seisin by adverse possession against their co-tenants for more than 20 years.

The petitioners are the collateral heirs of Tress C. Sprouse, who died intestate on 21 March 1960. Tress owned a one-half interest in a 52-acre tract of land in Yadkin County that she acquired in a 1952 special proceeding to divide land owned by her father at his death. That land, known as lots four and five, is the subject of this dispute.

Tress was married to Hugh Sprouse until her death. Tress and Hugh acquired the other one-half interest in the 52-acre tract by purchase.

The respondents include Nora S. Sprouse, the second wife of Hugh Sprouse, and Jay and Harold H. Casstevens, the nephews of Hugh Sprouse.

Hugh died testate on 30 January 1979. His will passed his interest in the lands in controversy to Nora for life, with a vested remainder to Jay and Harold. Nora renounced her share under Hugh's will and filed a dissent to that will.

Tress, Hugh, or Nora never lived on the lands in dispute. Hugh farmed and raised tobacco on the land until about 1975 or 1976 when he had a stroke. He then rented the farm until his death in 1979. After Hugh's death, rent was paid to Jay as the Administrator CTA of Hugh's estate.

On 17 October 1979, the attorney representing Hugh's estate wrote to a number of the parties about a possible cloud upon the title to lots four and five that Tress acquired in the 1952 special proceeding. He advised that under the intestate succession laws in effect at Tress's death on 21 March 1960, her interests in lots four and five passed to her collateral heirs, which includes the petitioners. The attorney suggested four options including conveyance to Hugh's devisees under his 1979 will or assertion of claims to the land.

Helen Clark, a petitioner here, wrote the estate's attorney on 28 November 1979 to inform him that she would seek remuneration or a deed for her share. On 18 December 1979, the petitioners' attorney wrote the estate's attorney seeking an accounting of his clients' interest and proposing an appraisal and negotiated sale of their interests.

The estate's attorney replied to the petitioners' attorney on 2 January 1980. In that letter, he stated that respondents Jay and Harold were going to seek independent counsel to reply to the petitioners' proposal.

The petitioners' attorney wrote Jay on 8 February 1980 to restate his proposal of 18 December 1979. Jay did not respond to this letter even though a response was requested.

The petitioners filed their petition for a partition sale on 30 June 1980. The respondents alleged sole seisin by adverse possession against their co-tenants for more than 20 years in their answer.

The case was heard in District Court by stipulation of the parties and was tried before a jury. One issue was submitted to the jury:

1. Did the Respondents Jay Casstevens, Harold Casstevens and Nora Sprouse acquire sole title to a one-half interest in the 52 acre tract of land in controversy by adverse possession?

ANSWER: Yes.

From that verdict and a judgment in favor of the respondents, the petitioners appealed.

*Randleman, Randleman & Randleman, by Richard N. Randleman, for the petitioner-appellants.*

*Shore & Hudspeth, by Henry B. Shore and N. Lawrence Hudspeth, III, for the respondent-appellees.*

ARNOLD, Judge.

This case presents two questions. First, did the respondents adversely possess the land in question to the exclusion of their co-tenants, the petitoners? Second, did the response of the petitioners to the 17 October 1979 letter toll the adverse possession by the respondents, or was the filing of their petition for partition the only act which could halt the running of time?

Under G.S. 1-40, adverse possession against an individual without color of title must run for 20 years before title ripens in the adverse possessor and is extinguished in the former owner. Adverse possession is defined "as the actual, open, notorious, exclusive, continuous and hostile occupation and possession of the land of another" for the statutory period. J. Webster, Real Estate Law in North Carolina § 286 (Hetrick rev. 1981).

Before a person can adversely possess land held in co-tenancy, there must be an ouster of his co-tenants. Although older cases speak of an actual ouster, *see* Annot., 82 A.L.R. 2d 5, 56-63 (1962), North Carolina adheres to the rule of constructive ouster.

That rule, which was first explained in *Thomas v. Garvan*, 15 N.C. 223 (1833), presumes the requisite ouster "if one tenant in common and those under who he claims have been in sole and undisturbed possession and use of the land for twenty years *when there had been no demand for rents, profits or possession.*" *Collier v. Welker*, 19 N.C. App. 617, 621, 199 S.E. 2d 691, 694-95 (1973) (emphasis added) (citations omitted).

Although the facts here do not show an actual ouster, constructive ouster was present from 21 March 1960 to at least 28 November 1979. It was on 28 November 1979 that petitioner Helen Clark notified the estate's attorney that she would seek remuneration for her share. The respondents can "tack" their possession to Hugh's prior adverse possession because they received a claim to the land upon Hugh's death. *See* Webster, *supra*, at § 292.

Even if we assume that the respondents held adversely to the petitioners, their possession and constructive ouster would not allow them to prevail unless they did so for the entire 20 year period. Upon completion of the statutory period, the ouster would then relate back to the initial taking of possession. *Cox v. Wright*, 218 N.C. 342, 11 S.E. 2d 158 (1940); *Collier*, 19 N.C. App. at 621, 199 S.E. 2d at 695. Although this presumption has been criticized, *see*, Note, *Real Property—Adverse Possession Between Tenants in Common and the Rule of Presumptive Ouster*, 10 Wake Forest L. Rev. 300 (1974) cited in *Sheets v. Sheets*, 57 N.C. App. 336, 338, 291 S.E. 2d 300, 301, *disc. rev. denied*, 306 N.C. 559, 294 S.E. 2d 371 (1982), it is the law in our State.

Because the respondents did not oust the petitioners for the requisite 20 years here, we reverse the verdict and judgment in their favor.

Helen Clark's 28 November 1979 letter, the 18 December 1979 letter from the petitioners' attorney to the estate's attorney, and the 8 February 1980 letter from the petitioners' attorney to respondent Jay, were sufficient to toll the running of any adverse possession. Notice that Clark would seek remuneration, and the request by the petitioners' attorney for an accounting and a financial statement, amounted to "a demand for rents, profits or possession" under the case law and the rule of constructive ouster.

Because of our disposition of this case, it is unnecessary to examine the petitioners' other arguments. Since the respondents did not show continuous adverse possession for the statutory period, the jury verdict and judgment were reached incorrectly.

Reversed.

Chief Judge VAUGHN and Judge HEDRICK concur.