DIETZ, Judge.
*211 In the early 1920s, three children inherited their father's 14-acre tract of land in Currituck County. One of the siblings remained on the property throughout his life and his descendants continue to live on the property today. The other two siblings moved out of state. Over time, interest in the property passed through inheritance until two families *212 each owned an undivided one-half interest in the property: the family still living on the Currituck County property and another family living out of state.
The two families did not keep in touch, and the out-of-state family never visited the property. But for decades, the family living on the land recognized the interest of their out-of-state relatives in various ways, even at one point suggesting that they partition the property to give the out-of-state relatives sole title to their share.
All that changed in 2005, when the out-of-state family sold their interest in the property to Petitioner Atlantic Coast Properties, a private developer with no connection to either family. Respondents-the descendants of the original heir who stayed on the land-then asserted for the first time that they acquired sole title to the property nearly 80 years earlier by adverse possession under the theory of constructive ouster.
The trial court granted summary judgment in favor of Respondents, concluding that Atlantic Coast Properties failed to forecast sufficient evidence to rebut Respondents' showing of constructive ouster. We disagree.
*294 If one cotenant has been in "sole and undisturbed possession and use of the property for twenty years, without any demand for rents, profits or possession by the cotenants, constructive ouster of the cotenants is presumed." Herbert v. Babson, 74 N.C.App. 519, 522, 328 S.E.2d 796, 798 (1985). But if the occupying tenant "does anything to recognize title of the cotenants during the twenty-year period, the presumption of ouster does not arise." Id.
Here, one of the out-of-state heirs testified that she spoke to the family still living on the property as recently as 2004 and they recognized her interest. Moreover, a family member living on the property testified that her father-one of the original heirs of the property-recognized the interests of her out-of-state relatives while he was alive and "raised her up" to understand that recognizing her out-of-state relatives' interest in the property was "the right thing to do."
To be sure, all of the original heirs to this property are long dead, so no one can testify directly to what was said in the 1920s or 1930s. But under Supreme Court precedent, a reasonable jury could conclude from this evidence that the family living on the property always recognized their out-of-state relatives' interests. That is all that is required to defeat summary judgment.
*213 Private property rights are the bedrock of liberty in our nation. In a case like this one, where a joint property owner's rights are threatened through the legal fiction of constructive ouster, without any actual ouster, we must be particularly vigilant in applying the well-settled summary judgment standard and permitting a jury to resolve fact disputes. To hold otherwise would expose well-intentioned property owners across our State to losses from the legal gamesmanship of their cotenants. Accordingly, for the reasons discussed below, we reverse the trial court's entry of summary judgment and remand for further proceedings.
Facts and Procedural History
M.C. "Mack" Moore acquired a 14-acre tract of land in Currituck County, North Carolina, on 15 August 1887. Mack Moore and his wife, Angeronia Moore, lived on the property and had three children during their marriage: John Sherman Moore, William Guthrie "W.G." Moore, and Parlie Mae Moore Baxter. Mack Moore died intestate on 29 March 1921 and the 14-acre tract of land passed to his three children equally with each child obtaining a one-third interest in the property as tenants in common.
John Sherman Moore moved to Pennsylvania where he stayed until his death in 1980. He died intestate with no wife and no children and his one-third interest in the Moore property passed to his two siblings, W.G. Moore and Parlie Mae Moore Baxter, leaving each surviving sibling with a one-half interest in the property.
Parlie Mae Moore Baxter left Currituck County and moved to New York. She married Leroy Baxter, Sr. and had one child, Leroy Baxter, Jr. When Parlie Mae Moore Baxter died intestate, her one-half interest in the Mack Moore property passed to Leroy Baxter Jr.'s wife and daughter, Susan and Valentis Baxter, who survived him.
W.G. Moore married Edna Norman Moore, and together they had four children: Sherman Malachi Moore, William Friley Moore, Respondent Edna Mae Moore Winslow,[1] and Respondent Angerona Lovie Moore Saunders. W.G. Moore was the only child of Mack Moore to continue to live on the Moore property. He lived on the property with his family and made improvements on the land over the years. W.G. Moore was still living on the Moore property when he died intestate in 1973 and his one-half interest in the property ultimately passed to his two surviving *214 children, Respondents Edna Winslow and Angerona Saunders, giving them each a one-fourth interest in the property.
In 2005, Petitioner Atlantic Coast Properties purchased the one-half undivided interest *295 of Susan Pratt Baxter and Valentis Baxter by quitclaim deed.
On 7 April 2006, Atlantic Coast Properties filed a petition to partition the Moore property claiming a one-half undivided interest in the property.
Respondents Edna Winslow and Angerona Saunders filed their answer and counterclaims on 17 May 2006, asserting sole possession and title by adverse possession. On 28 September 2007, Respondents moved for summary judgment. The trial court held a hearing on 10 February 2014. In an order entered 29 May 2014, the trial court granted Respondents' motion and entered judgment, finding Respondents to be "the owners solely seized in fee simple of all right, title, and interest in the Moore tract." The trial court based this conclusion "on the exclusive possession by W.G. Moore, and his heirs, and the presumption of ouster arising therefrom." Atlantic Coast Properties timely appealed.
Analysis
Atlantic Coast Properties argues that the trial court erred in granting Respondents' motion for summary judgment because they forecasted evidence that, if accepted by the jury, would rebut the presumption of constructive ouster. We agree.
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen.Stat. § 1A-1, Rule 56(c) (2013). When ruling on a motion for summary judgment, "the court must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial." Snipes v. Jackson, 69 N.C.App. 64, 72, 316 S.E.2d 657, 661 (1984). "[S]ummary judgment should be granted with caution and only where the movant has established the nonexistence of any genuine issue of fact." Moye v. Thrifty Gas Co., 40 N.C.App. 310, 314, 252 S.E.2d 837, 841 (1979). This Court reviews a grant of summary judgment de novo . In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).
Ordinarily, "the entry and possession of one tenant in common are presumed not to be adverse to his cotenants." Town of Winton v. Scott, 80 N.C.App. 409, 413, 342 S.E.2d 560, 563 (1986) (internal quotation marks omitted). With this presumption, one tenant in common cannot *215 adversely possess against a cotenant without an ouster, either actual or constructive. Collier v. Welker, 19 N.C.App. 617, 620, 199 S.E.2d 691, 694 (1973).
Under the doctrine of constructive or presumptive ouster, "[i]f one tenant in common has been in sole and undisturbed possession and use of the property for twenty years, without any demand for rents, profits or possession by the cotenants, constructive ouster of the cotenants is presumed, and the ouster relates back to the initial taking of possession by the tenant in possession." Herbert v. Babson, 74 N.C.App. 519, 522, 328 S.E.2d 796, 798 (1985). "Not only does 20 years of exclusive possession raise a presumption of ouster, but it also supplies all the elements necessary to support a finding that the possession was adverse and included elements of notice and hostility." Collier, 19 N.C.App. at 621, 199 S.E.2d at 695. But if the party claiming adverse possession "does anything to recognize title of the cotenants during the twenty-year period, the presumption of ouster does not arise." Herbert, 74 N.C.App. at 522, 328 S.E.2d at 798.
Atlantic Coast Properties argues that it forecast at least some admissible evidence that W.G. Moore and his heirs recognized the interests of the cotenants continuously from 1921 until the present, and therefore the presumption of constructive ouster does not arise. We agree.
First, Susan Baxter, one of the out-of-state heirs, testified that Respondent Edna Winslow contacted her by phone around 2004 and "asked [Susan] what [she] and her daughter, Valentis, wanted to do with their interest in the M.C. (Mack) Moore property" because Respondents were planning to subdivide it. Ms. Baxter's testimony is confirmed by Respondent Edna Winslow's deposition testimony, *296 in which Ms. Winslow indicated that she believed the proposed subdivision would have included the Baxters. Respondents also admitted to hiring a surveyor around the same time to "assist with the subdivision" of the property, further confirming Susan Baxter's testimony.
Second, Respondents conceded that their recognition of the Baxters' interests also was a view shared by their father, W.G. Moore, one of the three original heirs of the Moore property. Respondent Edna Winslow testified as follows when asked about the proposed subdivision of the property:
[Ms. Winslow]: [W]hat we was trying to do was get the property-everybody's interest in the property could get their own deeds. That was the main interest, so we didn't have to pay taxes all the time.
...
*216 Q. Okay. And tell me-the same thing I asked your sister was who is everybody ? In other words, who was included in this subdivision?
[Ms. Winslow]: Well, along then when we first started it was my brothers and my sister, and their wife.
Q. Were the Baxters included in this ?
[Ms. Winslow]: Yeah. Everybody that had an interest in it.
Q. Okay. And why were you going to include the Baxters if you had no relationship with them?
[Ms. Winslow]: Because that's the way we were raised up and that's the law.
...
Q. Okay. And what I was asking was, is the reason the Baxters were included because your mom and your dad had raised you all to do the right thing ?
[Ms. Winslow]: Yes.
Q. And they had acknowledged the Baxters' ownership interest, and that's why you and your sister thought that you should; is that fair?
[Ms. Winslow]: Yes.
Ms. Winslow also testified that she had known of the Baxters' interests "since growing up in [her] mom and dad's house" because family members often talked about these out-of-state heirs to the property. Ms. Winslow's sister, Angerona Saunders, also testified that she recognized the Baxters' interests because "that's something [she] felt like [her] mother and father would have wanted [her] to do" and "something that they would have done."
Finally, Susan Baxter testified that it was not until after the Baxters sold the property to Atlantic Coast Properties that Edna Winslow first contacted her and told her that "[she] and her daughter had no interest in the M.C. (Mack) Moore property because [she] and her daughter had not paid any of the property taxes."
All of this evidence, taken together and viewed in the light most favorable to Atlantic Coast Properties, creates a genuine issue of *217 material fact as to whether W.G. Moore and his heirs recognized the ownership interest of the Baxters, thus defeating the presumption of constructive ouster.
The dissent contends that, although there is evidence that Respondents and their father, W.G. Moore, recognized the ownership interest of the Baxters generally, "there is only speculation that W.G. Moore did anything to recognize the Baxters' interest in the property during the twenty year period from 1921 to 1941." The dissent contends that all evidence after 1941 is essentially irrelevant because, once W.G. Moore obtained sole title by adverse possession, recognition of the Baxters' interests by him or his daughters could not divest him of that sole interest.
Our Supreme Court considered and rejected this precise argument in a nearly identical context, holding that evidence from outside a particular twenty-year period can be used to infer a consistent position within that twenty-year period. See Clary v. Hatton, 152 N.C. 107, 67 S.E. 258, 259 (1910). In Clary, three siblings inherited property from their parents in 1872. Id. The brother lived on the property during his lifetime; his two sisters did not. When the brother died in 1908, his heirs claimed the entire property by adverse possession. Id. Although there was no evidence that the brother recognized his sisters'
*297 interests from 1872 to 1892, the sisters presented evidence that their brother acknowledged their interest in 1900, telling another man that "he only claimed or owned one third of the lot and his sister each owned a third." Id. The Supreme Court held that the brother's "declaration in 1900 in acknowledgement and recognition of his sisters' title is evidence that prior to then he had never claimed adversely to them." Id. This was sufficient evidence "to go to a jury that the possession of [the brother] was never adverse to the rights of his sisters ... and that consequently [the brother] acquired no title by reason of his possession." Id.
Here, too, W.G. Moore's recognition and acknowledgement of the Baxters' interests is sufficient to send the case to a jury. There is testimony that W.G. Moore recognized the Baxters' interest, that he taught his two daughters about the Baxters' interests when they were children, that the family talked about the Baxters' interests at family gatherings, and that W.G. Moore instilled in his daughters the belief that recognizing that interest-despite the fact that the Baxters never came to visit the property-was "the right thing to do."[2] From this testimony, a jury *218 readily could infer that W.G. Moore recognized the interests of the Baxter family consistently throughout his lifetime, including the period from 1921 to 1941. See Clary, 152 N.C. at 107, 67 S.E. at 259. This is particularly true here, because there is no evidence in this record indicating that W.G. Moore had a change of heart after 1941, or that he felt differently about the Baxters (his own sister and her family) in the 1920s and 1930s than he did for the rest of his life. Thus, under Clary, Atlantic Coast Properties has forecast sufficient evidence to survive summary judgment.
Finally, there are important policy reasons for following Clary and reversing the entry of summary judgment in this case. As this Court previously has observed, a rule requiring specific, concrete evidence from each twenty-year time period could encourage a cotenant "to deal with his fellow tenants in a less than open and honest manner." Sheets v. Sheets, 57 N.C.App. 336, 338, 291 S.E.2d 300, 301 (1982). An occupying tenant could repeatedly reassure his cotenants that their interests are secure and then, after the passage of time has removed the records or witnesses, abruptly change position and claim title by constructive ouster occurring decades, or even centuries, ago.
Private property rights are the bedrock of liberty. It is one thing to lose property rights to the open and notorious adverse possession of another. But in a case like this one, where a joint property owner's rights are threatened through the legal fiction of constructive ouster without any actual ouster, courts must be particularly vigilant in applying the well-settled summary judgment standard and permitting a jury to resolve fact disputes about who told what to whom.
Accordingly, we hold that Respondent Edna Winslow's direct testimony that her father W.G. Moore recognized the Baxters' interest during his lifetime (although without specifying any particular time frame) and that he raised her up to do the same, together with the complete absence of any evidence suggesting W.G. Moore ever felt differently at any point in his life, constitutes "more than a scintilla" of evidence from which the jury could conclude that Moore recognized his sister's interest throughout his entire life, including from 1921 to 1941.[3]
*298 Accordingly, we reverse *219 the trial court's entry of summary judgment and remand this case for further proceedings.
Conclusion
Atlantic Coast Properties forecasted sufficient evidence to create a genuine issue of material fact on the issue of whether W.G. Moore and his heirs recognized the title of their cotenants and defeated any claim of constructive ouster. Accordingly, we reverse the trial court's order granting summary judgment in favor of Respondents.
REVERSED AND REMANDED.
Judge HUNTER, JR. concurs.
Chief Judge McGEE dissents in a separate opinion.

Edna Winslow passed away during these legal proceedings and her heirs were substituted as Respondents.

The dissent has a different interpretation of some of this testimony, one that is considerably more favorable to Respondents. That interpretation is a perfectly reasonable one as well. But this is summary judgment, so we must interpret all testimony in the light most favorable to Atlantic Coast Properties, the non-moving party. Singleton v. Stewart, 280 N.C. 460, 465, 186 S.E.2d 400, 403 (1972).

The dissent also contends that Ms. Winslow's deposition testimony in which she testified that her father, W.G. Moore, recognized the Baxters' interest during his lifetime was the product of an objectionable deposition question and was inadmissible hearsay:
Q. And they [Ms. Winslow's mother and father] had acknowledged the Baxters' ownership interest, and that's why you and your sister thought that you should; is that fair?
[Ms. Winslow]: Yes.
There is nothing improper about the form of this question-it is not a compound question and it is not vague or confusing. See, e.g., State v. Hughes, 159 N.C.App. 229, 582 S.E.2d 726 (2003). And the response is a statement by a party-opponent, Respondent Edna Winslow, manifesting her adoption or belief in the truth of her father's statement, thus qualifying it under one of the most fundamental and commonly invoked hearsay exceptions. See N.C. Gen.Stat. § 8C-1, Rule 801(d). Lastly, these are evidentiary arguments not raised by Respondents in their summary judgment papers or at the hearing. Appellate courts ordinarily do not address evidentiary arguments not raised and preserved in the trial court. See Plemmer v. Matthewson, 281 N.C. 722, 725, 190 S.E.2d 204, 206 (1972).