McGEE, Chief Judge, dissenting.
Because I believe the trial court properly granted summary judgment in favor of Respondents, I dissent.
"On appeal, an order allowing summary judgment is reviewed de novo. " Park East Sales, L.L.C. v. Clark-Langley, Inc., 186 N.C.App. 198, 202, 651 S.E.2d 235, 238 (2007) (citation omitted). "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal."
"Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.' " Our Supreme Court has *220 held that "an issue is genuine if it is supported by substantial evidence, and [a]n issue is material if the facts alleged ... would affect the result of the action[.]" Furthermore, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]"
Andresen v. Progress Energy, Inc., 204 N.C.App. 182, 184, 696 S.E.2d 159, 160-61 (2010) (citations omitted); see also Amanini v. N.C. Dept. of Human Resources, 114 N.C.App. 668, 682, 443 S.E.2d 114, 122 (1994).
In Herbert v. Babson this Court stated:
A tenant in common may ... acquire the title of cotenants by constructive ouster. If a cotenant occupies the entire property for twenty years to the exclusion of a cotenant it is presumed there was an ouster at the time of the entry and it is presumed the action of the occupying cotenant during this period includes everything necessary to establish adverse possession.
Herbert v. Babson, 74 N.C.App. 519, 521, 328 S.E.2d 796, 798 (1985) (citations omitted). This Court further stated that:
If one tenant in common has been in sole and undisturbed possession and use of the property for twenty years, without any demand for rents, profits or possession by the cotenants, constructive ouster of the cotenants is presumed, and the ouster relates back to the initial taking of possession by the tenant in possession. However, if the tenant in possession does anything to recognize title of the cotenants during the twenty-year period, the presumption of ouster does not arise.
Id. at 522, 328 S.E.2d at 798 (citations omitted).
The presumption includes everything necessary to be proved when the title can be ripened only by actual adverse possession as defined by this Court, and is a most reasonable inference of the law and justified under the circumstances, first, because men do not ordinarily sleep on their rights for so long a period, and, second, because a strong presumption arises that actual proof of the original ouster has become lost by lapse of time.
*221 Dobbins v. Dobbins, 141 N.C. 210, 216, 53 S.E. 870, 872 (1906) ; see also Collier v. Welker, *299 19 N.C.App. 617, 621-22, 199 S.E.2d 691, 695 (1973).
W.G. Moore lived on the disputed real property ("the property") from 1921 until his death in 1973. During that time, W.G. Moore farmed the property. His children, including Angerona Moore Saunders ("Angerona Saunders") and Edna Moore Winslow ("Edna Winslow") (together, "Respondents"), were born on the property. W.G. Moore built a new home on the property in 1952 and then demolished the original house. Both W.G. Moore and his wife, Edna, are buried on the property, along with other family members. Neither Parlie Moore Baxter, nor any of her heirs ("the Baxters"), occupied the property after 1921. The Baxters never paid taxes on the property nor demanded rents, profits or possession at any time. Herbert, 74 N.C.App. at 522, 328 S.E.2d at 798. In fact, there is no evidence of any communication whatsoever between the Baxters and the W.G. Moore family until the early 1980s when Respondents attempted to contact the Baxters, but received no response.
Approximately eighty-five years passed between the time W.G. Moore and his family became the sole occupants of the property in 1921 and the filing of this action in 2006. In order for Respondents to prevail, there need only have been one uninterrupted twenty-year period within those eighty-five years to satisfy the requirements set forth in Herbert. See Ellis v. Poe, 73 N.C.App. 448, 451, 326 S.E.2d 80, 83 (1985) (events occurring after the twenty-year period was complete could not "constitute an acknowledgment of cotenancy" by the occupier). Once the requirements of adverse possession by constructive ouster have occurred, title has passed. Id. Petitioner acknowledges that all the requirements for constructive ouster were present except, Petitioner contends, "[W.G.] Moore and his family recognized the title of his brother and sister in the ... property thus ... rebutting any presumption of ouster." Our Supreme Court has acknowledged the strong presumption that the requirements of adverse possession have been satisfied in situations where the sole possession of the property in question by a cotenant was far shorter than is the case here:
Justice Aston [reasoned] in that case: "Now, in this case, there has been a sole and quiet possession for 40 years, by one tenant in common only, without any demand or claim for an account by the other, and without any payment to him during that time. What is adverse possession or ouster, if the uninterrupted receipt of the rents and profits without account for near 40 years is not?" And by *222 Justice Willes: "This case must be determined upon its own circumstances. The possession is a possession of 16 years above the 20 prescribed by the statute of limitations, without any claim, demand, or interruption whatsoever; and therefore, after a peaceable possession for such a length of time, I think it would be dangerous now to admit a claim to defeat such possession."
The proof in this case showed an exclusive, quiet, and peaceable possession by the defendants and those under whom they claim for more than 20 years-indeed for more than 40 years-and the law presumes that there was an actual ouster, not at the end of that period, but at the beginning, and that the subsequent possession was adverse to the cotenants who were out of possession. This converted the estate in common, as between the former cotenants, into one in severalty, in the defendants, and defeated plaintiffs' right to partition or to an ejectment.
Dobbins, 141 N.C. at 218, 53 S.E. at 873 (citations omitted).
Assuming, arguendo, that Respondents "recognized the title" of the alleged cotenants, this "recognition" is immaterial if full title had already passed to W.G. Moore at some earlier date. W.G. Moore would have obtained full title to the property so long as he did not do anything to recognize title in the Baxters for any continuous twenty-year period between 1921 and his death in 1973. Once the requirements for constructive ouster for a twenty-year period were met, W.G. Moore obtained sole title to the property pursuant to adverse possession. Dobbins, 141 N.C. at 217, 53 S.E. at 873. Once W.G. Moore, along with his wife, became sole owners of the property, they could do with it as they pleased-including deciding to give a *300 portion of it to the Baxters. Beck v. Beck, 125 N.C.App. 402, 406, 481 S.E.2d 317, 320 (1997). I believe Petitioner fails to forecast sufficient evidence to rebut the presumption of ouster. Choosing a twenty-year period during W.G. Moore's occupancy of the property, there is only speculation that W.G. Moore did anything to recognize the Baxters' interest in the property during the twenty year period from 1921 to 1941.
Angerona Saunders was asked at her deposition:
[Petitioner's Attorney]: And the reason you and your sister were, I take it, honoring that interest [the Baxters' purported interest] was that that's something you felt like your mother and father would have wanted you to do?
*223 [Saunders]: Yes.
[Petitioner's Attorney]: And something that they would have done?
[Saunders]: Yes, I believe they would have done that.
Petitioner's attorney asked Angerona Saunders if it was true that she "would not even have contacted [the Baxters] had you not thought that was consistent with your mother's and father's desires?" Angerona Saunders responded that she believed in "doing things the right way" and in "doing it fair." Angerona Saunders acknowledged that that was how her parents "raised [her]."
Initially, Angerona Saunders nowhere stated that her parents at any time did anything to acknowledge the Baxters' interest in the property. Angerona Saunders merely stated that she believed her parents would have wanted the Baxters to share in ownership of the property because it was the "right thing" to do. This is merely Angerona Saunders "belief," it does not forecast the presence or absence of any fact. Further, there is no indication of when Angerona Saunders' parents might have decided that they would share ownership of the property-assuming arguendo they ever made such a decision. There is certainly nothing indicating that Angerona Saunders' parents held this belief or in any way did anything acknowledging the Baxters' interest in the property between 1921 and 1941. Angerona Saunders' "belief" in what her parents would have wanted her to do does not constitute evidence sufficient to rebut the presumption of ouster.
In addition, Angerona Saunders was born in 1948, seven years after the relevant period ended. Angerona Saunders could not have had any personal knowledge of what occurred between 1921 and 1941. When Angerona Saunders was asked "[d]o you ever remember your dad discussing anything about his interest in the property[,]" she answered, "No." Angerona Saunders testified that she knew that Parlie Moore Baxter "lived in New York. I knew nothing about her, not one thing about" the Baxters other than that W.G. Moore's sister had married a Baxter and had a son named Leroy.[4] Angerona Saunders testified that W.G. Moore never talked to her about why he never tried to contact his sister or her family. When asked if there was "[a]nything else that you can recall *224 your dad or your mom saying about the Baxters[,]" Angerona Saunders answered, "[n]ope." When Angerona Saunders was asked if W.G. Moore had "ever indicate[d] to you all that he was aware that [the Baxters] had an ownership interest in the property [,]" Angerona Saunders answered: "He just told us that it was his father and just told us who they was. But that's about it, what he said." When asked who she thought owned the property when she was growing up, Angerona Saunders answered that "we was under the impression that [W.G. Moore] was the one that owned it then, that nobody else was there or showed up, no more than he and [his brother] Uncle Sherman." Angerona Saunders testified that she never heard W.G. Moore and her Uncle Sherman discuss the property, and she never heard her mother or "anyone else" "mention anything about anyone else owning any interest in the property[.]" Angerona Saunders never "conceded that [her] recognition of the Baxters' interests also was a view shared by [her] father [.]" Concerning the survey that was conducted in 2007 showing a division of *301 the property into plots, Angerona Saunders stated they had the survey done because "[w]e were going to convey them [some of the plots] to [the Baxters]."
Edna Winslow also gave deposition testimony in which she acknowledged that her parents had "raised [her] to do the right thing." The following exchange occurred at her deposition:
[Petitioner's Attorney]: And [your parents] had acknowledged the Baxters' ownership interest, and that's why you and your sister thought that you should [partition the property]; is that fair?
[Winslow]: Yes.
[Respondents' attorney]: Objection. Object to the form of the question.
[Petitioner's Attorney]: Well, tell me in your own words why you felt like you needed to recognize the Baxters' interest by including them in the division?
[Winslow]: Well, at the time we were going by what, you know ... we were doing it because it was Mack Moore's heirs.
Edna Winslow's testimony demonstrates her belief that including the Baxters was "the right thing" to do, and that that was "how her parents had raised her." The portion of Edna Winslow's testimony where she answered affirmatively to Petitioner's attorney's leading question concerning her parent's acknowledgment of "the Baxters' interest" was *225 objected to, and Petitioner's attorney rephrased the question as a non-leading question. Edna Winslow's subsequent testimony was that she and Angerona Saunders were planning on including the Baxters in the partition of the property because the Baxters were "Mack Moore's heirs."
Edna Winslow was born in 1943, two years after W.G. Moore had continuously occupied the property for twenty years. Edna Winslow did not have any personal knowledge of how either W.G. or Edna Moore treated the property during that time period. When Edna Winslow was asked: "So about the only conversation you ever heard your dad say about [Parlie Moore Baxter] was that she had married a Baxter[,]" Edna Winslow answered: "Right." Edna Winslow testified that she didn't even know if W.G. Moore knew that the Baxters lived in New York and that she learned most of what she knew about the Baxters "from Uncle Sherman." Edna Winslow stated that her Uncle Sherman told her about the Baxters, but that her mother "never talked about" any interest the Baxters might have had in the property. Edna Winslow knew that Parlie Moore Baxter was the daughter of Mack Moore "by Uncle Sherman telling us; and daddy told us he had a sister, but she was dead." I do not understand Edna Winslow's testimony to have been "that she had known of the Baxters' interest 'since growing up in [her] mom and dad's house' because family members often talked about these out-of-state heirs to the property." Edna Winslow testified in the following manner:
[Winslow]: [The Baxters] were Mack Moore's heirs, I guess.
[Petitioner's Attorney]: Okay. And that's something that you had known since growing up in your mom and dad's house?
[Winslow]: Yeah. Uncle Sherman told us a lot about them.
[Petitioner's Attorney]: What did he tell you a lot about?
[Winslow]: He just told us that [Parlie Moore Baxter] had died and she had one son, and he was in a wheelchair.
Edna Winslow then agreed with Petitioner's attorney's question: "[T]hat's where your deceased aunt's interest had ended up, was either with her husband or her son?" Unfortunately, as the trial court was informed, Edna Winslow died before the summary judgment hearing and would not be available to testify were this matter to proceed to trial.
There is nothing in Edna Winslow's testimony constituting evidence that W.G. Moore ever did anything acknowledging any interest of the *226 Baxters' in the property, much less that he did so in the period between 1921 and 1941. Further, even if we were to consider this portion of the deposition as proof that W.G. Moore acknowledged the Baxters' interest in the property, there is no evidence allowing us to determine when he did so. Because over eighty years have passed and Petitioner presented no evidence to the trial court that W.G. Moore did anything to acknowledge *302 the Baxters' interest in the property from 1921 to 1941, "a strong presumption arises that actual proof of the original ouster has become lost by lapse of time." Dobbins, 141 N.C. at 216, 53 S.E. at 872.
I can find no testimony that "W.G. Moore ... taught his two daughters about the Baxters' interests when they were children, [or] ... talked about the Baxters' interests at family gatherings[.]" The only testimony supporting the statement in the majority opinion that "W.G. Moore recognized the Baxters' interest" is the objected to statement of Petitioner's attorney at Edna Winslow's deposition to which Edna Winslow initially agreed. None of Edna Winslow's personal deposition statements indicate she ever discussed any interest the Baxters might have had in the property with her father. Angerona Saunders testified that W.G. Moore never discussed such matters with her, and growing up she understood her father to have owned the property. Petitioner has produced no witness testimony from anyone who was alive before 1941, nor any testimony from anyone who witnessed W.G. Moore do or say anything recognizing the Baxters' interest in the property during that time period.
It is correct that our Supreme Court in Clary considered testimony of a witness to defeat a presumption of ouster. In Clary, a witness testified, concerning the cotenant brother John Hatton ("Hatton"), who had resided on the property in question for over twenty years before his death, and who had told the witness that
eight years before he died, and while [Hatton] was then living on the lot, that he only claimed or owned one-third of the lot, and his sisters each owned a third, and for that reason he had not improved it and did not wish to spend any money on it.
These declarations of John Hatton are inconsistent with a claim of sole ownership or exclusive possession, and are competent, not to impeach any title that he had already acquired by twenty years' possession, but to show that in reality he had never acquired any title by such possession, because his possession during the entire period it continued, from 1872 to the day the declaration was made, *227 was of a permissive and not of an adverse character; and that is was with his sisters' consent. This would tend to rebut any presumption of an ouster at any time prior to such declaration.
Clary v. Hatton, 152 N.C. 107, 109, 67 S.E. 258, 259 (1910) (emphasis added). I emphasize the portion of the quote above because I want to make clear that once title is acquired through adverse possession, no subsequent acknowledgment to the contrary will defeat it. I do not maintain that "all evidence after 1941 is essentially irrelevant." The holding in Clary stands for the proposition that an occupying cotenant's statements may be used to prove he never acquired sole title in the first instance.
I disagree that the situation in Clary is nearly identical to the one before us. In Clary, the witness testified that he had had a conversation with Hatton in 1900, and that Hatton expressly stated that his occupation was permissive. The witness in Clary was alive and testified to this conversation directly, and Hatton's statement was made only eight years after the relevant period. Further, Hatton died in 1908, and the action was brought against his heirs in early 1909. In the present case, Edna Winslow was not yet alive in the relevant period; because she passed away following her deposition, she can make no clarification concerning her understanding of the Baxters' "interest" beyond the clarification discussed above; and the Baxters never brought suit against Defendants. Further, the statement made by Hatton in Clary was unequivocal. In the present case we can only speculate concerning whether W.G. Moore even made a statement, much less what his meaning and intent might have been. Finally, the Baxters did not act immediately to protect their interest. They did nothing for approximately eighty-five years until Petitioner purchased whatever interest they might have had. Now Petitioner is attempting to determine what W.G. Moore's state of mind was approximately sixty-five years ago.
In my opinion it is the "strong presumption ... that actual proof of the original ouster has become lost by lapse of time" that *303 defeats Petitioner's challenge to the granting of summary judgment. W.G. and Edna Moore are deceased. Without any tangible evidence of an acknowledgment of the Baxters' interest during the relevant period, and with no testimony raising more than a permissible inference that there was no twenty-year period in which Moore failed to acknowledge the Baxters' interest, I would hold that summary judgment was correct. The evidence presented to the trial court could only allow the jury to infer that W.G. Moore might have recognized an interest in the Baxters at some unknown time. The presumption in Dobbins is tailored for the situation *228 before us. The presumption is that evidence of W.G. Moore's intent to solely possess the property has been lost due to the passing of approximately eighty-five years in which the Baxters failed to assert their rights.
The sole enjoyment of property for a great number of years, without claim from another, having right and under no disability to assert it, becomes evidence of a title to such a sole enjoyment; and this not because it clearly proves the acquisition of such right, but because from the antiquity of the transaction, clear proof cannot well be obtained to ascertain the truth, and public policy forbids a possessor to be disturbed by stale claims when the testimony to meet them cannot easily be had. Where the law prescribes no specific bar from length of time, 20 years has been regarded in this country as constituting the period for a legal presumption of such facts as will sanction the possession and protect the possessor.
Dobbins, 141 N.C. at 216-217, 53 S.E. at 872 (citation and quotation marks omitted) (emphasis added); see also id. at 216, 53 S.E. at 872 (" 'The possession of one tenant in common is in law the possession of all his cotenants, because they claim by one common right. When, however, that possession has been continued for a great number of years, without any claim from another who has a right, and is under no disability to assert it, it will be considered evidence of title to such sole possession; and where it has so continued for twenty years, the law raises a presumption that it is rightful, and will protect it. This it will do, as well from public policy, to prevent stale demands, as to protect possessors from the loss of evidence from lapse of time.' " ) (citation omitted) (emphasis added). Our Supreme Court has already addressed the policy considerations inherent in this type of property dispute involving "stale claims when the testimony to meet them cannot easily be had." Id.
The Baxters did nothing to claim any right in the property for approximately eighty-five years, and the testimonies of Angerona Saunders and Edna Winslow do not constitute "more than a scintilla [of evidence] or a permissible inference" that W.G. Moore ever did anything to recognize the Baxters' interest in the property. Id. (citation omitted). This constituted a constructive ouster.
[Constructive ouster] is a disseizin by one tenant of his cotenant, the taking by one of the possession and holding it against him by an act or series of acts which indicate a decisive intent and purpose to occupy the premises to the *229 exclusion and in denial of the right of the other. This is what the law presumes, whether it be in exact accordance with the real facts or not. It is a presumption the law raises to protect titles, and answers in the place of proof of an actual ouster and a supervening adverse possession. The presumption includes everything necessary to be proved when the title can be ripened only by actual adverse possession as defined by this [c]ourt[.]
Dobbins, 141 N.C. at 215-16, 53 S.E. at 872. I would hold that there is no genuine issue of material fact and that summary judgment was proper.

Though the "family tree" included in the record indicates that Parlie Moore Baxter died in 1980, both Angerona Saunders and Edna Winslow testified that Parlie Moore Baxter died before either of them was born.